[Argued June 9, 1893; Decided June 27, 1893.]

## STATE v. LUCAS.

[S. C. 33 Pac. Rep. 538.]

1. LARCENY BY BAILEE—PAROL EVIDENCE.— In a case of larceny by bailee parol evidence is always admissible to show the real ownership of the property charged to have been stolen.

2. BAIL MONEY—ATTORNEY'S LIEN—CODE, § 1044.— Where money is specially deposited with an attorney to be used as cash bail for a client, and to be returned as soon as that purpose shall be accomplished, the attorney cannot acquire any lien thereon for his services; he is simply a special bailee and responsible as such.

3. JURY TRIAL—REMARKS BY COURT.—A remark by the court that "it does not follow because a woman is lewd that it affects her veracity," when it is attempted to affect the credibility of a witness by showing that she is lewd, is an invasion of the province of the jury, and prejudicial error: State v. Clements, 15 Or. 237, cited and approved.

Multnomah County: MICHAEL G. MUNLEY, Judge.

Defendant appeals.　Reversed.

The defendant, John M. Lucas, who is an attorney of this court, was charged with the crime of larceny by bailee, on an indictment charging that on October 22, 1892, being the bailee of three hundred dollars, lawful money of the United States, the personal property of one Ninta Parker, he feloniously embezzled and converted the same to his own use.　It appears that some time in 1892 an information was made before a magistrate charging Frank Lynch and Ninta Parker with the crime of adultery, and that defendant appeared for and represented Lynch, who alone was arrested.　The preliminary examination resulted in his being held to await the action of the grand jury with bail in the sum of two thousand dollars, in default of which he was committed to jail.　Through the efforts of the defendant, Lynch's bail was subsequently reduced to three hundred dollars, but being unable to secure a bail bond, the defendant called upon Miss Parker,

and consulted her about furnishing the money to deposit in lieu thereof, telling her that the bail had been reduced to three hundred dollars. After some hesitation Miss Parker finally agreed to furnish the money for such bail, and borrowed three hundred dollars of one Winser, which was delivered to the defendant either by Miss Parker or Winser, both being present at the time, for the purpose indicated, he giving to Winser the following instrument in writing in acknowledgment thereof:

"PORTLAND, OREGON, Aug. 23, 1892.

"Received of M. L. Winser $300 for bail, and for securing the discharge or release of Frank J. Lynch, charged with adultery; said bail money to be returned to said M. L. Winser upon final disposition of such charge.

"JOHN M. LUCAS.
"GEO. H. THURSTON."

After receiving the money, the defendant represented to the committing magistrate and district attorney that it was impossible to raise more than one hundred and fifty dollars as bail for Lynch, and, with the consent of the district attorney, the bail was reduced to that amount, which was deposited by the defendant, and Lynch discharged, the defendant appropriating the remaining one hundred and fifty dollars to his own use. On the twenty-ninth of August the defendant procured and filed with the magistrate a bail bond, and received from him the money deposited in lieu thereof. Thereafter, but prior to the date of the conversion alleged in the indictment, Miss Parker repaid to Winser the three hundred dollars, and received from him an order directing the defendant to deliver to her the money placed in his hands to be used as a deposit in lieu of bail for Lynch. Upon a trial before a jury the defendant was convicted and now appeals. Reversed.

*Henry E. McGinn* and *Alfred F. Sears* ( *Nathan D. Simon* on the brief), for Appellant.

*George E. Chamberlain,* attorney-general, *Wilson T. Hume,* district attorney, and *John H. Hall,* for the State.

MR. JUSTICE BEAN delivered the opinion of the court:

The indictment does not set out or allege the terms of the bailment under which defendant received possession of the money in question, nor was it necessary that it should: *State* v. *Chew Muck You,* 20 Or. 215 (25 Pac. Rep. 355). But the court, in charging the jury, after stating that among the material allegations of the indictment are (1) "that the money was put into the hands of the defendant as bailee, by Miss Parker, for a specific purpose"; (2) "and that it was to be returned to her when the object of such trust was accomplished," and (3) "that the defendant bailee had failed to return the money, or account for it according to the nature of his trust, and that he had wrongfully, and with felonious intent, converted the same to his own use," proceeded to say that if "the defendant Lucas received this money from Miss Parker, upon the specific trust alleged in the indictment, to be returned to her when the purpose of the trust had been accomplished, and that the defendant had not accounted to Miss Parker for the money in accordance with the nature of the trust, and feloniously converted the same to his own use, etc., you must find him guilty as charged." Now, the indictment does not allege that the defendant received the money from Miss Parker, or that he ever agreed to return it to her; and the evidence, about which there is no dispute, shows that by the written agreement he was to return the money to Winser, and not to Miss Parker, and for a breach of this trust he is being prosecuted. The allegation that the property belonged to Miss Parker is a material averment in the indictment, and must be proven by the state before a conviction can be had, because it is descriptive of the offense charged; but if it did belong to her it is of no consequence for the purpose of this prose-

cution from whom the defendant received the money. The gravamen of the offense charged is that the defendant was in possession as bailee of certain money belonging to Miss Parker, which he has unlawfully and feloniously converted to his own use, and it is of no consequence from whom he received the money, or with whom the contract of bailment was made, if in fact it was the property of Miss Parker, and he has so converted it to his own use. "Within the meaning of the criminal law, a bailment," says Mr. Bishop, "is where one has personal property entrusted to him to be returned or delivered to another in specie when the object of the trust is accomplished": Bishop, Criminal Law, § 857. When, therefore, the money was entrusted to the defendant by either Miss Parker or Winser, to be returned or delivered to Winser when the object of the trust should be accomplished, his undertaking included the duty of a bailee, and the object of this trust would be accomplished by the return of the money to Winser, or his assignee, after it had served the purpose for which it was intended. And yet, by the instruction, the jury were in effect told that unless the defendant had accounted to Miss Parker for this money after the purpose of the trust upon which he received it had been accomplished, he should be convicted, and this notwithstanding the fact that by the terms of the contract of bailment he was to return the money to Winser.

1. It was contended by the defendant that the court erred in the admission of the testimony of Miss Parker and Winser, tending to show that the money belonged to Miss Parker. This objection is based upon the contention that because the contract of bailment was in writing, and between Winser and the defendant, it was not competent to show by parol that the money in fact belonged to Miss Parker. The rule is too well settled to require the citation of authorities that, as between the parties, parol evidence is not admissible to contradict or vary the terms of a writ-

ten contract, but this rule has no application to the case in hand. This evidence does not in any way tend to contradict or vary the terms of the writing but only to show the ownership of the subject matter. The writing does not purport to be a contract between the owner of the money and the defendant; it simply acknowledges the receipt of it by the defendant from Winser, to be used for a special purpose, and to be returned to him when that purpose shall have been accomplished. It contains no statement as to the ownership of the money, and, even if it did, would not preclude the state from alleging and proving the name of the real owner. Although the ownership of the property and the fact of bailment are material, they are in a certain sense incidental, the offence consisting in the unlawful and felonious conversion of the property or money by the defendant to his own use. The material subjects of inquiry on the trial were whether the money in fact belonged to Miss Parker, and, if so, whether the defendant feloniously converted it to his own use.

2. The next question is whether the defendant, if employed by Miss Parker as attorney for either Lynch or herself, had a lien upon the money in question after the purpose for which he received it had been accomplished, and the money had been returned to his possession. Upon this question the defendant requested the court to charge the jury that if the money belonged to Miss Parker, and she "engaged the defendant to appear for herself or for Frank Lynch, or for either or both of them, then the money in the hands of the defendant would be a fund upon which he would have a lien for the reasonable value of such services, and you must find the defendant not guilty." The court refused to so charge, but instructed the jury that "if this money was given to him (defendant) for a special purpose, and he was to apply it for bail, and there was no understanding that it should be applied for any other pur-

pose, he could not have a lien upon it, and he could not apply it to the purpose of satisfying a claim for reasonable compensation." It is a general rule that an attorney has a retaining lien on papers, money, or other property in his possession belonging to his client, to secure his compensation for professional services rendered the client, whether the amount thereof is specially agreed upon or implied, and may retain such property until the balance due him shall be paid: Code, § 1044; 1 Jones, Liens, § 113; Weeks, Attorneys, § 371; *Hulburt* v. *Brigham*, 56 Vt. 368; *Van Etten* v. *State*, 24 Neb. 734 (1 Am. Law. Reg. 419; 40 N. W. 289).

But no such lien can attach where the papers or money are delivered to the attorney for a special purpose, as if the deeds are delivered in order that he may exhibit them to another, (*Balch* v. *Symes*, 1 Turn. & R. 87,) or to enable him to draw a mortgage, (*Lawson* v. *Dickerson*, 8 Mod. 306,) or when the money is delivered to him to apply in settlement of a suit (*Anderson* v. *Bosworth* (R. I.), 8 Atl. 339; 1 Jones, Liens, § 138). It has, however, been held that if the attorney is permitted to retain the property after the object for which it was given has failed, there is a general lien; (*Ex parte Pemberton*, 18 Ves. 282; *Ex parte Sterling*, 16 Ves. 258); but this is on the theory that permitting the papers or money to remain in the hands of an attorney after the object for which he received them has been accomplished or failed is equivalent to a general deposit, and can therefore have no application to a case where money or other property of a client is put into the hands of his attorney for a specific purpose, to be disposed of in a particular manner after such purpose shall have been accomplished. In such case no general lien can attach, because the terms of the bailment are inconsistent with the right to a lien. In such case the attorney becomes a bailee of the property for a special purpose, with the same rights, and subject to the same duties and liabilities, as any other bailee. If, therefore, in this case the money of Miss Par-

ker was delivered to the defendant for the specific purpose of being used as cash bail to secure the discharge of Lynch, with an agreement on his part that when the money should have accomplished the purpose for which it was delivered to him it should be returned to Winser, the terms of the bailment are inconsistent with, and antagonistic to, his right to hold a lien upon the money for his compensation as attorney for either Miss Parker or Lynch, and no such lien can attach in the absence of a special agreement to that effect.

3.   The defendant's counsel, in the cross-examination of Miss Parker, who was a very material witness for the state, sought to affect her credibility by showing that she was lewd and immoral.   During the argument of an objection to the admission of such evidence, the court, in the presence of the jury, said: " It does not follow that because a woman is lewd, that it affects her veracity." To say the least this was an unfortunate remark, and while it was no doubt an honest expression of the court's opinion, and only in answer to the argument of counsel, it was certainly invading the province of the jury, who are, under our system, the exclusive judges of the credibility of a witness, and was prejudicial error: *State* v. *Clements*, 15 Or. 244 ( 14 Pac. Rep. 410); *Hair* v. *Little*, 28 Ala. 236; *Fuhrman* v. *Mayor of Huntsville*, 54 Ala. 263; *Andreas* v. *Ketcham*, 77 Ill. 377.   It is of the highest importance in the administration of justice that the court should never invade the province of the jury, or by word or act intimate its opinion upon a question of fact, or the credibility of a witness, for, as was said by the supreme court of California in *McMinn* v. *Whelan*, 27 Cal. 319, "From the high and authoritative position of a judge presiding at a trial before a jury, his influence with them is of vast extent, and he has it in his power, by words or actions, or both, to materially prejudice the rights and interests of one or other of the parties.   By words or conduct he may, on the one hand,

support the character or testimony of a witness, or, on the other hand, may destroy the same, in the estimation of the jury; and thus his personal and official influence is exerted to the unfair advantage of one of the parties, with a corresponding detriment to the other."

It follows that the judgment of the court below must be REVERSED and a new trial ordered.