STATE, RESPONDENT, *v.* DUNCAN, APPELLANT.

(No. 6,278.)

(Submitted March 15, 1928. Decided April 2, 1928.)

[266 Pac. 400.]

*Criminal Law—Rape—Trial—Election by State Between Several Offenses — Jury — Instructions must be Written — Evidence — Witnesses — Impeaching Credibility — Improper Instruction.*

Rape—Trial—Jury Returning into Court for Information—Instructions to be in Writing.
  1.  Where in a prosecution for rape the jury, after retiring to the jury-room, were returned into court for information relative to a certificate of birth of the prosecutrix which had been excluded from the evidence, and an affidavit made by her to the effect that defendant had not committed any offense against her, which was admitted, and the court orally advised them that the certificate had been excluded and that as to the affidavit they would have to determine for themselves, its action in not going further

and instructing them orally as to what weight should be given the affidavit was proper, since under section 11969, Revised Codes 1921, instructions, in the absence of a waiver by the parties, must be delivered in writing.

Same—Court may Advise Jury Orally as to What Matters upon Request for Information After Retirement to Jury-room.
2.  Mere information to the jury in a criminal case asked for by the jury after retirement to the jury-room, with reference to what took place during the trial, containing no element of an instruction as to the law may be given orally by the court, as may also enlightenment on a question as to evidence admitted or excluded, but any statement tending to mislead it or to invade its province constitutes reversible error.

Same—Defendant Deeming Further Instructions to Jury Necessary on Return to Courtroom for Information must Present Them to Court.
3.  If counsel for defendant, under the circumstances above, deemed further instructions to the jury necessary, it was his duty to have prepared a written statement as to the point he desired covered and presented it to the court; failure to do so barred him from complaining on appeal that error was committed in not further instructing the jury.

Same—Impeaching Credibility of Prosecutrix—What Inadmissible.
4.  In a prosecution for rape committed on a girl under the age of eighteen years, an affidavit made by her to the effect that prior to the date of the commission of the offense she had been intimate with a number of other men, offered by defendant, for the purpose of affecting her credibility as a witness, was properly excluded.

Same—Trial—Election by State Between Several Criminal Acts Made Apparent by Evidence—Right to Compel Election may be Waived.
5.  The right to compel the state to elect as to which one of a number of acts of sexual intercourse shown by the evidence in a prosecution for rape to have occurred between prosecutrix and the defendant the same day is a personal privilege of defendant which is waived by failure to make the demand; but where the state's evidence tends directly to prove one certain act for the purpose of procuring a conviction thereon, the particular act becomes the act charged. The prosecutor thereby made his election and may not thereafter elect a second time.

Same—Evidence Showing Several Criminal Acts—When Failure of Court to Instruct as to Which Act Conviction Might be had not Prejudicial Error.
6.  Where the jury believed from the evidence that defendant had intercourse with prosecutrix in a rooming-house in the course of thirty-five minutes during which the parties remained in the room, it was immaterial that the state's evidence showed that two acts were committed within that time, and in the absence of a request for a more specific instruction as to which one of the acts they should consider, the court's instruction that conviction could follow only on proof beyond a reasonable doubt of the act charged in the information was sufficient.

Evidence—Witnesses—Impeaching Credibility—Improper Instruction.
7.  The extent to which impeaching evidence impaired the credibility of witnesses assailed is a question exclusively for the jury; therefore an offered instruction stating that defendant in a prose-

5.  See 22 Cal. Jur. 377, 392.
7.  See 27 Cal. Jur. 182.

cution for rape had introduced testimony for the purpose of impeaching the prosecutrix and her father, and that such impeaching testimony raises, as a matter of law, a reasonable doubt of the guilt of the defendant, was properly refused.

Rape — Unbelievable Testimony — Impossibility of Occurrence — When Claim not Sustainable on Appeal.

8. *Held,* that while testimony on the part of the prosecution in a rape case may be so improbable as to destroy its effect as legal evidence and compel reversal of the judgment of conviction, the contention that it is unbelievable that a young girl will permit a man to have sexual intercourse with her without previous acquaintance is not testimony of that character; nor, in the absence of testimony to that effect, may the court declare that her assertion that defendant committed four acts of intercourse with her in the course of one evening was an impossibility.

Same—Nonage of Prosecutrix—What Facts Immaterial.

9. In a prosecution for rape under subdivision 1 of section 1100, Revised Codes 1921 (an act of sexual intercourse accomplished with a female under the age of eighteen years), it is immaterial that she consented to the act, that defendant was ignorant of her age or that she misrepresented her age to him, or that she was lacking in chastity, or at the time was an inmate of a house of prostitution, nonage on her part being sufficient to warrant conviction.

[1–3]  Criminal Law, 16 **C. J.**, sec. 2307, p. 939, n. 37; sec. 2467, p. 1031, n. 95; sec. 2468, p. 1032, n. 5, 6, 7; sec. 2501, p. 1059, n. 42; sec. 2503, p. 1061, n. 61; sec. 2555, p. 1088, n. 23; sec. 2557, p. 1089, n. 45; 17 **C. J.**, sec. 3695, p. 344, n. 26.

[4]  Witnesses, 40 **Cyc.**, p. 2602, n. 40, p. 2606, n. 57.

[5]  Criminal Law, 16 **C. J.**, sec. 2157, p. 856, n. 23; sec. 2168, p. 860, n. 17, 18; sec. 2177, p. 863, n. 58.

[6]  Criminal Law, 16 **C. J.**, sec. 2169, p. 861, n. 24.

[7]  Criminal Law, 16 **C. J.**, sec. 2293, p. 932, n. 14; sec. 2341, p. 957, n. 2.  Witnesses, 40 **Cyc.**, p. 2589, n. 61.

[8]  Evidence, 23 **C. J.**, sec. 1969, p. 146, n. 57. Rape, 33 **Cyc.**, p. 1491, n. 52.

[9]  Rape, 33 **Cyc.**, p. 1420, n. 35, p. 1438, n. 79, p. 1491, n. 47.

*Appeal from District Court, Wheatland County; Wm. L. Ford, Judge.*

JESSE DUNCAN, convicted of rape, appeals from the judgment and the order refusing him a new trial.  Affirmed.

9. Effect of defendant's mistake as to age of girl under statute denouncing sexual offenses against females under specified age, see notes in 21 **Ann. Cas.** 1058; 25 **L. R. A.** (n. s.) 661.  See, also, 22 **Cal. Jur.** 376; 22 **R. C. L.** 1188–1193.  Right of accused to show unchastity of prosecutrix in statutory rape, see note in 48 **L. R. A.** (n. s.) 269.  See, also, 22 **R. C. L.** 1190.

*Messrs. Belden & DeKalb* and *Mr. Emmet O'Sullivan,* for Appellant, submitted a brief; *Mr. O. W. Belden* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for the State, submitted a brief; *Mr. Norman R. Barncord,* County Attorney of Wheatland County, argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Jesse Duncan, a man twenty-five years of age, was convicted of the crime of rape, alleged to have been committed on July 15, 1927, upon one Anna Williamson, a girl of seventeen. The jury fixed the punishment at not less than two nor more than four years' imprisonment. After judgment was entered defendant moved for a new trial, which motion was overruled. He has appealed from the judgment and from the order denying him a new trial.

The undisputed facts established on the trial are as follows: On July 15, 1927, the prosecutrix was living in the home of Al Bouchard, in Harlowton, Wheatland county. The Bouchard family included Bouchard, his wife, his son Elwin and his wife, and a daughter, Freda. The prosecutrix roomed with Freda; she was born July 4, 1910.

The father and brother of the prosecutrix slept at the county jail of which the elder Williamson was the janitor. In the evening of July 15, defendant, with a taxi driver, called for Freda and Anna in a taxicab for the purpose of taking them to a dance at a near-by town, but instead took them to a roadhouse where the party remained for about an hour, drank a small amount of beer, and danced a few times, and then returned to Harlowton before midnight. Defendant and prosecutrix left the taxicab near the Urner rooming-house and

the latter refused to go home at the solicitation of Freda, who was taken directly home by the taxi driver and went to bed.

The rooming-house mentioned is on the second floor of a business block. Defendant and the prosecutrix went upstairs in the building, and the girl remained in the bathroom while defendant secured a room. The landlady who showed defendant to his room presumed that he was alone and retired; about thirty-five minutes thereafter she was awakened by Williamson and his son, who secured the number of defendant's room and proceeded to it, followed by a third man whose identity was not discovered by the landlady. The Williamsons forced their way into the room against the opposition of the defendant; they found the girl's dress on the foot of the bed and the girl under the covers; defendant was either entirely nude, as they testified, or had on B. V. D.'s, which were torn off during his attempt to escape from the enraged father, according to his version. The father of the girl sought to assault defendant with a pocket-knife, but was held by his son and another man until defendant could dress in the hall under the eye of the town marshal, whereupon the son took the girl to the Bouchard home, and thereafter he and the father took her to their ranch about twelve miles from Harlowton.

The girl discussed the occurrence with her father the following day, and it was never thereafter mentioned in conversation between them. On the 17th, at the ranch and in the absence of Williamson and without threats of coercion of any kind, the girl stated to the county attorney and the sheriff that defendant had had sexual intercourse with her in the Urner room. Thereafter the girl was interviewed by the defendant's mother, and on the 18th Elwin Bouchard, his mother, and his sister, Freda, called at the Williamson ranch and took Anna to Harlowton, where, in the presence of defendant's mother and his attorney, she made an affidavit in which she stated that, prior to July 15, she had had sexual intercourse with a number of men, giving their names and approximate dates, and then stated that "the action against

Jesse Duncan is being prosecuted without her consent and against her will," that "no cause of action exists against said Jesse Duncan," and that "he has committed no crime or offense against affiant"; that the action should be dismissed as "it has no basis in fact"; and that, if she thereafter testified against the defendant, it would be because of fear of bodily harm at the hands of her father. That portion of the affidavit which refers to Duncan was admitted in evidence and read to the jury.

The disputed facts are substantially as follows: On direct examination, the prosecutrix testified that she met Duncan for the first time when the two men called for her and Freda; that she went to the Urner room on the night of July 15 and there remained for nearly three-quarters of an hour, during which time defendant had sexual intercourse with her twice, with a period of perhaps five minutes intervening. Thereafter the girl testified that, while at the roadhouse, she went with defendant to a barn and there, lying on a dirt floor for a period of three-quarters of an hour, he had intercourse with her two times, with but fifteen minutes intervening. The other members of the party denied that they separated during the evening, and the proprietor of the place testified that the barn had a plank floor. In rebuttal, the sheriff and town marshal testified that they visited the place during the trial and that the barn then had a dirt floor.

On cross-examination, prosecutrix was asked if she had not told defendant's mother that her statement to the county officers was not true, and had not made the same admission to the Bouchards while driving in from the ranch; she denied that she had ever made such a statement, but declared that Mrs. Bouchard asked her to go to town and "change her statement," which she did.

Defendant's mother testified that she asked the girl if her statement to the officers was true, and that she looked down, shook her head, and said only, "I am afraid of my dad, I am scared to death of my dad." Elwin Bouchard and Freda tes-

tified that she stated on the road in from the ranch that her statement to the officers was not true. Freda Bouchard further testified that when the prosecutrix came to her room after the affair she said, "Jess was not to blame, I went up there."

The father and brother of the girl testified that they went to the Urner rooming-house on information received from Elwin Bouchard, who stated to them that he was there at the insistence of his wife. Mrs. Bouchard testified that her husband was at home in bed with her from 9:30 until morning on the night of the 15th, and in this she was corroborated by Bouchard; however, on cross-examination, he admitted that on a night between the 4th of July and the 15th he did go to the jail and advised Williamson that his daughter was out with someone. The question was then put to him, "But you didn't follow him up to the Urner rooming-house?" to which he replied, "No, I followed him possibly a block along there and then went home." It is clear that someone advised Williamson of what was going on at the rooming-house, and that a third man did go there with the Williamsons; the record discloses no intimation that they had occasion to go there on any other night than the 15th.

The jury was duly instructed and later retired for deliberation; after a period of perhaps twenty hours the jury was returned to court, when the following colloquy was had:

"Court: Gentlemen of the jury, the bailiff informs me that you would like to talk with me. What is your desire?

"Juror: There is a few things that some of us don't seem to understand. In regard to the birth certificate of Anna Williamson, is that to be accepted in evidence?

"Court: The birth certificate, that was excluded as evidence.

"Juror: And in the matter of the affidavit of Miss Anna Williamson, is that to be accepted in evidence?

"Court: So far as that is concerned, I can't tell you anything about it. You have to determine the evidence for yourselves. I have gone as far as I can at this time; I can't instruct you further orally.

[82 Mont. 170.]

"Mr. O'Sullivan: Defendant excepts to the ruling of the court refusing to instruct the jury further."

1. Defendant's assignments numbered 1, 2 and 3 predicate [1–3] error upon the statement and action of the court above referred to; his counsel assert that the jurors desired information as to whether the affidavit mentioned was received in evidence and should be considered by them; that the court violated the mandatory provisions of section 12012, Revised Codes 1921, in refusing to further instruct the jury, and that thereunder the court may orally instruct the jury.

The state contends that the jurors knew that the affidavit, or a part thereof, had been admitted in evidence; that they did not intimate that they were in doubt as to its contents, but what they wanted to know was whether to accept or reject the statement therein contained as a part of the evidence before them; in other words, that the jury wanted to know the legal effect of this bit of evidence.

In the absence of a waiver by the parties to a criminal prosecution, under section 11969, subdivision 5, Revised Codes 1921 (formerly section 9271, Rev. Codes 1907), the instructions to the jury must be delivered in writing (*State* v. *Tudor,* 47 Mont. 185, 131 Pac. 632), but this mandatory provision does not extend to directions to the jury as to their conduct in the juryroom, the form of the verdict or like matters (*State* v. *Lewis,* 52 Mont. 495, 159 Pac. 415). Mere information concerning what took place during the trial, which contains no element of an instruction as to the law, would likewise fall without the provisions of the statute and could likewise be given orally; but when the trial court attempts to instruct the jury on any matter of law without first reducing the matter to writing and then reading it to the jury, reversible error is committed. (*State* v. *Fisher,* 23 Mont. 540, 59 Pac. 919.) Statements made by the trial court tending to mislead the jury or to invade its province will constitute reversible error (*State* v. *Tate,* 55 Mont. 343, 177 Pac. 243), and a trial judge "cannot be too careful and guarded in language and conduct in the presence

of the jury to avoid prejudice to either party." (*State* v. *Smart*, 81 Mont. 145, 262 Pac. 158.)

Section 12012, Revised Codes 1921, provides that: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of the county attorney and the defendant and his counsel." The same rule applies to the giving of the required information, however, as to instructing the jury originally; if the court merely directs the jury as to their conduct or enlightens them on a question as to evidence admitted or excluded, there is no valid objection to the judge doing so orally; but if he attempts to instruct the jury at such a time, orally and without the consent of the parties, he commits reversible error. (*State* v. *Fisher*, above.)

Therefore, when the trial judge advised the jury that the birth certificate was not admitted in evidence, he did not violate the statute; but if the jurors desired advice or instruction as to whether they should "accept" or reject the affidavit of the prosecutrix, made before trial, or as to what weight should be given to the statements therein contained, as the trial judge evidently interpreted the question asked, such information as was proper could only be given by a written instruction.

As the court differentiated between the birth certificate and the affidavit by stating that the former was not admitted in evidence, but that, as to the latter, "you have to determine the evidence for yourselves," it indicated to the jurors, if they were not already aware of the fact, that the affidavit, as read to them, was before them for their consideration; if the jurors did not so understand the statement made by the court, they could, and probably would, have interrogated the judge further.

The exception taken by counsel for defendant at the time indicates that counsel then was under the impression that it

was the duty of the court to instruct the jury further and orally; his exception is to the court's refusal to "instruct the jury further," and the present contention that all the juror wanted to know was as to whether the affidavit was admitted in evidence would seem to be an afterthought. Indeed, counsel now insists that, under the provisions of section 12012, above, the court was required to instruct the jury orally, and that the provisions of section 11969, above, have no application, but, as shown above, counsel is in error.

Had counsel desired the court to further instruct the jury, as indicated by his "exception," he should have prepared and presented to the court a written statement as to the point he desired covered (*State* v. *Francis,* 58 Mont. 659, 194 Pac. 304), and, having failed to do so, defendant is in no position to complain of the court's failure to further instruct. (*State* v. *Kacar,* 74 Mont. 269, 240 Pac. 365.)

2. Error is predicated upon the court's exclusion of that [4] part of the affidavit in which the prosecutrix stated that she had had sexual intercourse with other men, and on the exclusion of testimony concerning such acts on her part with others, as well as statements and admissions made by her showing that she had had intercourse with a number of men prior to July 15, 1927. The defendant contends that, although the state had made no attempt to show that the character or reputation of the prosecutrix, as to this trait, was good, and although her lack of chastity or consent to the act complained of was immaterial by reason of nonage, this testimony was admissible as affecting her credibility as a witness.

We are foreclosed from ruling with defendant on this contention by the decision of this court in *State* v. *Richardson,* 63 Mont. 322, 207 Pac. 124. It could not be upheld even under the dissenting opinion of Mr. Justice Galen therein, which counsel insists correctly states the law, as in this case there was no denial by the prosecutrix that she had had intercourse with other men, nor was there any corroborative testimony based upon his physical condition shortly after the crime is alleged to

have been committed, such as was commented upon by our learned Associate in his dissenting opinion. The rule announced in the *Richardson Case* is supported by the great weight of authority, and we see no good reason for departing therefrom. The reason for the rule is well stated in *People* v. *Johnson,* 106 Cal. 289, 39 Pac. 622: "If this class of evidence was admissible as going to the credibility of * * * the prosecutrix [in a rape case] in its entirety, then it would be equally admissible as against the veracity of any female * * * called upon to give evidence in a case. Yet no such principle is recognized anywhere." The rule has been held to extend to prostitutes. (*State* v. *Smith,* 7 Vt. 141; *Commonwealth* v. *Churchill,* 11 Met. (Mass.) 538, 45 Am. Dec. 229; *People* v. *Yslas,* 27 Cal. 630.)

We have heretofore gone as far as we can in cautioning courts and juries against the too ready acceptance of the uncorroborated testimony of the girl in such cases as this, and, although it may be a sociological truism that young girls without sex morals are also lacking in veracity, the science has not yet reached a stage where its fiat can be incorporated in instructions based upon proof of laxity of morals. No error was committed in the exclusion of this class of testimony.

[5] It is next contended that, although the court's instructions correctly stated the law, they did not sufficiently cover the facts, as the evidence disclosed four acts of sexual intercourse on the day named in the information, of any one of which the defendant might have been convicted, and the state was not required to elect upon which act it relied for a conviction.

It is clear from the record that the state was relying upon an act charged as having been committed in the Urner room, and counsel for defendant must have so understood the state's position, for no motion to compel an election was made. The first act testified to by the prosecutrix was that committed in the room, and evidence as to the acts at the roadhouse came

into the record only in an incidental manner in the course of her further testimony.

The court fully instructed the jury to the effect that the defendant could only be convicted on proof, beyond a reasonable doubt, of the act charged in the information, and then further instructed the jury that ''evidence of prior acts of intercourse between the prosecutrix and the defendant was admitted only for the purpose of corroborating her testimony regarding the commission of the act charged.''

There are a number of reasons why the court cannot be held to have erred in failing to make its instructions more definite and certain, among which is the rule that the right to compel an election is a personal privilege of the defendant and is waived by failure to make the demand. (16 C. J. 860.) Next, an election is made by the prosecution by the manner in which it presents its evidence: ''When evidence had been introduced tending directly to the proof of one act, and for the purpose of procuring a conviction upon it, from that moment that particular act became the act charged. What had, till then, been floating and contingent, had now become certain and fixed. The prosecutor had made his election, and could not elect again.'' (*State* v. *Harris,* 51 Mont. 496, 154 Pac. 198.)

The purpose of compelling an election and in giving definite instructions as to the act charged, and the purpose of proof of other acts, is to prevent a situation wherein each juror might be left to select the particular act upon which he bases his decision that the defendant is guilty and the defendant thus be found guilty although the jurors had not agreed as to any specific act. (*State* v. *Harris,* above; *State* v. *Gaimos,* 53 Mont. 118, 162 Pac. 596; *State* v. *Mott,* 72 Mont. 306, 233 Pac. 602.)

Here there can be no question but that the jurors agreed [6] upon what took place in the Urner room, the act concerning which the prosecutrix first testified, and on which, as to opportunity and intent on the part of the defendant, her testimony was abundantly corroborated. It is true that the prose-

cutrix testified to two acts committed in the room, with five minutes intervening, but it would be technicality extended to absurdity to say that an election should have been made as to which of these acts the state would rely upon, for the reason that the jurors might not all agree that the defendant was guilty of the one or the other of such acts. If the jurors all believed, as they did, that the defendant had intercourse with the prosecutrix during the thirty-five minutes that they remained in the room, it is immaterial whether the state showed that he effected a penetration twice or only once within the limited time fixed by the prosecutrix, and, in the absence of a request for a more specific instruction on the subject, at least, the court sufficiently instructed the jury. (*People* v. *Slaughter,* 33 Cal. App. 365, 165 Pac. 44.)

4. Defendant asserts that the court erred in refusing his [7] offered instruction No. 1, which reads: "You are instructed in this case that the defendant had introduced testimony for the purpose of impeaching the testimony of   *   *   * the prosecutrix and   *   *   * her father, and that such impeaching testimony raises, as a matter of law, a reasonable doubt of the guilt of the defendant and your verdict should be for the defendant."

The offered instruction is clearly erroneous. The evidence adduced tended to impeach the credibility of the witnesses against whom it was directed, but the extent, if any, to which it impaired the credibility of the witness assailed is a question to be determined exclusively by the jury (*People* v. *McLane,* 60 Cal. 412; *People* v. *Barnes,* 2 Idaho, 161, 9 Pac. 532; *State* v. *Lucas,* 24 Or. 168, 33 Pac. 538; *Huff* v. *State,* 104 Ga. 521, 30 S. E. 808; *Gilyard* v. *State,* 98 Ala. 59, 13 South. 391), and the court cannot infringe upon the right of the jury to determine the credibility of a witness by an instruction which directly, or in effect, withdraws that question from their consideration (*Towns* v. *State,* 111 Ala. 1, 20 South. 598; *Rose* v. *Otis,* 18 Colo. 59, 31 Pac. 493; *Spivey* v. *State,* 8 Ind. 405).

The condition of the record is not such as to even entitle the jury to invoke the rule "that a witness false in one part of his testimony is to be distrusted in others" (sec. 10672 (3), Rev. Codes 1921), for it was not shown that either of the witnesses against whom impeaching testimony was directed had testified falsely as to any material matter. There was a conflict in the evidence on which the jury, as the sole judge of the credibility of witnesses, was entitled to believe either the testimony on the part of the state or that by which the defense sought to impeach and discredit that testimony.

As to the affidavit of the prosecutrix, introduced for the purpose of impeachment, it will be noted that it seems to have been skillfully drawn to contain no statement of fact concerning the relations of prosecutrix and the defendant, but merely conclusions of the affiant which would not have been admissible had the witness attempted to make the same statements from the witness-stand. This method was not adopted out of delicacy, as the first part of the affidavit contains the statement that the prosecutrix had had sexual intercourse with a number of men whose names were given, and the affidavit gives one the impression that the prosecutrix was attempting to "change" her statement at the request of interested parties, as she suggested in her testimony, without contradicting or retracting her former statement.

5. It is finally urged that the evidence, taken as a whole, is [8] insufficient to justify the judgment, as the testimony of the prosecutrix is not only flatly contradicted but is so unnatural, improbable, and unreasonable as to render belief impossible, and therefore the judgment should be set aside in conformity with the declarations of this court in *State* v. *McIlwain*, 60 Mont. 598, 201 Pac. 270, and *State* v. *Moe*, 68 Mont. 552, 219 Pac. 830.

We are in full accord with what is said in each of the cases cited with reference to the testimony then before the court, as we are with the reversal of the judgment of conviction in the case of *State* v. *Wilson*, 76 Mont. 384, 247 Pac. 158, but wherein

is the testimony before us so improbable as to destroy its effect as legal evidence?

Counsel first assert that it is unbelievable that a young girl would permit a man to have sexual intercourse with her on such short acquaintanceship. The undisputed evidence shows that, whether such conduct is unnatural or not, in this case the girl had consented, and she, as well as the defendant, had prepared for the commission of the act in the Urner room, and, if the defendant did not then commit the act, it was only because he was interrupted; further, from the undisputed evidence, the jury were justified in believing that the act was committed in the period of more than half an hour during which the two were together in the room without interruption. The opportunity and the intent were clearly shown aside from the testimony of the prosecutrix.

It is further asserted that the girl should not be believed, as it would have been impossible for the defendant to have committed four such acts within the time covered by the girl's testimony. There is no testimony in the record on which to base the assertion of impossibility, and we certainly cannot take judicial notice of any fact or circumstance which would warrant such a conclusion.

Certain discrepancies between the testimony of the girl and that of her father are pointed out, but these differences are on immaterial matters and are only such as may readily occur in the testimony of witnesses relating what took place at a time when they were laboring under stress of great excitement.

Under the law as declared by subdivision 1 of section 11000, [9] Revised Codes 1921, any man who accomplishes an act of sexual intercourse with a female under the age of eighteen years, when such female is not his wife, is guilty of the crime of rape. Under this provision, the consent of the female, the lack of knowledge of her age, or even her misrepresentation as to her age, and the lack of chastity of the female, and even the fact that she was at the time an inmate of a house of prostitution, are all immaterial matters; a conviction depends solely

upon proof of intercourse, and nonage, and if a man indulge in promiscuity with strange women he has only himself to blame if it later develops that he has unwittingly committed the crime of rape. Such is the law as declared by the law-making body of this state, and the province of the courts is to enforce the law as they find it.

The evidence is sufficient to warrant the verdict and judgment, and, as no reversible error is shown, the judgment and order must be affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.