**HUBBY v. UNITED STATES.**

No. 11281.

Circuit Court of Appeals, Fifth Circuit.

July 10, 1945.

James P. Hart, of Austin, Tex., for appellant.

W. R. Smith, Jr., U. S. Atty., T. Gilbert Sharpe, Asst. U. S. Atty., and H. W. Moursund, Sp. Atty., Department of Justice, all of San Antonio, Tex., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellant was indicted, together with one Clarence Elliott Akin, for unlawfully dealing in narcotic drugs. The first and third counts charged defendants with unlawfully concealing narcotic drugs which to their knowledge had been imported into the United States contrary to law; and the second and fourth counts charged defendants with unlawfully selling narcotic drugs not in pursuance of a written order issued in blank for that purpose by the Secretary of the Treasury.[1]

---

[1] The four counts were as follows:

Count One: "That on or about October 27, 1944, in Travis County, Texas, within said district and division, Clarence Elliott Akin and James Lee Hubby, acting jointly and severally, unlawfully concealed a narcotic drug, to-wit, six (6) grains of heroin, which to their knowledge had been imported into the United States contrary to law."

Count Two: "That at the time and place and within the jurisdiction all as described in the first count hereof, Clarence Elliott Akin and James Lee Hubby, acting jointly and severally, unlawfully sold six (6) grains of heroin to O. L. Stringer not in pursuance of a written order of the said O. L. Stringer on a form issued in blank for that purpose by the Secretary of the Treasury."

Count Three: "That on or about December 12, 1944, at the place and within

Akin pleaded guilty on all counts of the indictment; appellant pleaded not guilty and was duly tried. He was convicted by the jury on the first count, and found not guilty on the last three counts. On appeal to this court he urges seven specifications of error, including one challenging the sufficiency of the evidence to sustain the conviction. Since we have concluded that this assignment should be sustained, it is not necessary and hardly appropriate to discuss the other contentions.

Appellant operated the Alamo Hotel Annex in Austin, Texas, and Akin was employed by him as a clerk in the hotel. The government sought to establish the offense charged in Count One by the testimony of O. L. Stringer, one of its agents. His testimony was as follows:

A. We walked into the hotel and Mr. Hubby was sitting behind the desk, and the informer walked up to the side of the desk, and I was standing in front, and the informer says: "How much will you charge us for a big paper? I had one and a fellow offered me $55.00 for it, and I sold it. How much will you let us have it for?" He said, "You will have to see Mr. Akin, he is across the street over there, drinking coffee."

"Q. Is that the Akin who is charged jointly in this indictment with the defendant Hubby? A. Yes, sir.

"Q. All right. A. So we started out the door and got outside the door and the informer turned back, and said, 'What cafe—you mean the Paris Cafe?' And he said, 'Yes.' So we drove over to the Paris Cafe and the informer got out and walked in, and I stayed in the car, and he came back in a few minutes * * *.

*      *      *      *      *

"Q. After he came out, what did you do? A. We drove back to the hotel, and then Mr. Akin—

"Q. Where did you park at the time? A. At the entrance to the hotel.

*      *      *      *      *

"Q. * * * All right; what happened then? A. Mr. Akin came out and said the stuff would cost us $40.00.

"Q. And you were outside the hotel? A. Yes, sir, and then he went back into the hotel.

*      *      *      *      *

"Q. Now, when you parked in front of the Alamo Annex Hotel, state what happened there. A. Well, Mr. Akin came out to the car, and we gave him the money.

*      *      *      *      *

"Q. All right. You said you gave Akin something, is that correct? A. Yes, sir; we gave him $40.00.

"Q. Then what happened? A. He goes back in the hotel and stays a few minutes, and then he comes back to the car.

"Q. And what happened then? A. And he gave us the heroin.

"Q. How much? A. Six grains.

"Q. Six grains? A. Yes, sir.

"Q. What did you do then? A. Then he comes up to the informer, and the informer turned and gave it to me * * *.

*      *      *      *      *

"A. * * * After he delivered the heroin to us, we drove off.

"Q. What did you do with this heroin? A. I carried it back to Houston with me, and I mailed it to the chemist by registered mail."

On cross-examination, he said:

"Q. * * * did you see Hubby leave the hotel on that occasion? A. No, sir.

"Q. The only time you saw Hubby on that occasion was when you and this informer were there in the lobby of the hotel, is that right? A. Yes, sir."

The government informer, referred to by the witness, was by him said to be in the employ of the government at the time of the trial, but, on the assumption that his usefulness would be impaired, his identity was not made known, nor was he called to testify in the case.

There is no evidence in the record of any transaction prior to October 27, 1944, to indicate that appellant was ever charged with any criminal offense, or to indicate that he had ever had any connection with

the jurisdiction, all as described in the first count hereof, Clarence Elliott Akin and James Lee Hubby, acting jointly and severally, unlawfully concealed a narcotic drug, to-wit, eight (8) grains of heroin, which to their knowledge had been imported into the United States contrary to law."

Count Four: "That on or about Decem-

ber 12, 1944, at the place and within the jurisdiction, all as described in the first count hereof, Clarence Elliott Akin and James Lee Hubby, acting jointly and severally, unlawfully sold eight (8) grains of heroin to O. L. Stringer not in pursuance of a written order of the said Secretary of the Treasury."

any unlawful traffic in narcotic drugs. Testifying as a witness in his own behalf, his version of what occurred when Stringer and the informer talked with him did not include any mention of any "big paper." He said he was asked where Akin could be found, and he replied that Akin probably was dining at the Paris Cafe; that nothing further took place, and he did not see the defendant again on that occasion. He stated that he had never possessed any heroin, nor had he concealed any; and that he had nothing whatsoever to do with any narcotic drug, either individually or with Clarence Akin.

If appellant's testimony be ignored and the government's testimony alone be considered, it merely shows that the government informer asked appellant about purchasing a "big paper," and was told to see Akin from whom the informer later purchased six grains of heroin. What was meant by a "big paper" is nowhere explained by the record.

In Morei v. United States, 6 Cir., 127 F.2d 827, 831, the court said: "Accepting the facts as contended for by the prosecution—which are squarely contradicted by the defendant—the only thing Dr. Platt did was to give Beach the name of Morei as a man from whom he might secure heroin to dose horses in order to stimulate them in racing. This is not the purposive association with the venture that, under the evidence in this case, brings Dr. Platt within the compass of the crime of selling or purchasing narcotics, either as principal, aider and abettor, or accessory before the fact."

■ The government conceded that its whole case depended purely upon circumstantial evidence. It is well established that in such a case the evidence must "not only be consistent with the guilt of the defendant, but must be inconsistent with any other reasonable hypothesis of innocence." Crain et al. v. United States, 5 Cir., 148 F.2d 615, 617, decided April 10, 1945. The evidence wholly failed to meet this test and was insufficient to justify the jury in finding appellant guilty of concealing heroin as charged in Count One.

■ Following the introduction of evidence with reference to the concealment and sale of the six grains of heroin on or about October 27, 1944, the government offered evidence which showed that the government witness, Stringer, had a conversation with Akin at the door of the

Alamo Hotel Annex on December 12, 1944, following which Akin talked with appellant at the desk in the lobby, then returned to Stringer, and Stringer gave him $45; that appellant later got in his car at the hotel and with Akin as a companion drove away; that they returned in about twenty minutes, appellant entering the hotel, and Akin going over to the car in which Stringer was sitting and handing him a package containing heroin. Appellant had no conversation with the government agent, and what Akin said to appellant when he talked to him at the desk in the lobby of the hotel was not shown. The jury in returning a verdict of not guilty on Counts Three and Four apparently considered this evidence insufficient to show that appellant had any guilty connection with what occurred on that date, and this evidence could not in any way support a conviction of the appellant of unlawfully concealing heroin on October 27, 1944, as charged in Count One.

■ The court admitted a great deal of other evidence relating to transactions similar to those charged in the indictment, occurring on December 20 and 21, 1944. The charges against appellant did not constitute a continuing offense; each of the four counts in the indictment charged a distinct offense. When the government sought to prove the transactions which took place on December 20 and 21, 1944, the evidence was objected to on the ground that they were disconnected and separate transactions. The trial court, however, permitted the evidence to be introduced to show system and intent. Whether or not this evidence was admissible for such purposes, it is well settled that it could not be used to supplement or strengthen the evidence adduced to prove the substantive offense charged in Count One.

In Railton v. United States, 5 Cir., 127 F.2d 691, 692, Judge Sibley said: "We recognize the rule that light may be sought in this way to show motive or intent, or a system of crime, in some cases. Weiss v. United States, 5 Cir., 122 F.2d 675. But it is a fundamental rule of criminal law that guilt of another offense cannot generally be proven to show guilt of the offense charged in the indictment. Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed 1077; Bird v. United States, 180 U.S. 356, 21 S.Ct. 403, 45 L.Ed. 570; Scheinberg v. United States, 2 Cir., 213 F. 757, Ann.Cas. 1914D, 1258; Wolf v. United States, 2 Cir., 290 F. 738; Fish v. United States, 1 Cir.,

215 F. 544, 545, L.R.A.1915A, 809; Tedesco v. United States, 9 Cir., 118 F.2d 737. This is true even when guilt of the other offense has been established by a conviction, or is admitted. When, as in all the instances in this record, there has been no conviction, there is no admission, but strong denial, and in the main the issue is as to them the same as in the main issue, whether Simpson or Railton is to be believed, confusion rather than light is apt to result. We think it quite likely the jury concluded that Railton was a grafter and was convicted of conspiracy for that reason, but that they were doubtful whether he participated in the stealing of the property of the United States, so they acquitted him of the very transaction which they were authorized to try."

In Paris v. United States, 260 F. 529, 531, the Eighth Circuit Court said: "The general rule is that evidence of the admission by a defendant of an offense similar to that for the alleged commission of which he is on trial is not admissible to prove his commission of the latter offense. Boyd v. United States, 142 U.S. [450], 454, 456, 457, 458, 12 S.Ct. 292, 35 L.Ed. 1077; Hall v. United States, 150 U.S. 76, 81, 82, 14 S.Ct. 22, 37 L.Ed. 1003; 16 C.J. 586, § 1132. * * * Such evidence tends to draw the attention of the jury away from a consideration of the real issues on trial, to fasten it upon other questions, and to lead them unconsciously to render their verdicts in accordance with their views on false issues rather than on the true issues on trial."

See also Fish v. United States, 1 Cir., 215 F. 544, L.R.A.1915A, 809, and Coulston v. United States, 10 Cir., 51 F.2d 178.

■ We recognize that there are a number of exceptions to the general rule excluding evidence of other offenses, as where such evidence tends directly or fairly to prove guilt of the crime charged and to connect accused with it, or to establish the absence of mistake or accident, or where the crime charged and the other offense are closely related. 22 C.J.S., Criminal Law, § 683. The transactions of December 20 and 21, however, are not within the exceptions but fall squarely within the general rule.

■ While testimony of the transactions which occurred on December 20 and 21 could have been offered to establish the offenses charged in Counts One and Two, as time is not of the essence of said offenses, the government elected to offer testimony of transactions which occurred on October 27, 1944, to prove appellant guilty of the charges specifically alleged in those counts in the indictment. It then elected to offer testimony of transactions occurring on December 12, 1944, to establish appellant's guilt of the charges specifically alleged in Counts Three and Four in the indictment. This course on the part of the government, we think, evidenced an election on its part to rely on the transactions testified to as having occurred on October 27, 1944, and on December 12, 1944, to establish the unlawful concealments and sales of heroin alleged to have taken place on those dates in the several counts of the indictment. Having so elected, it could not thereafter offer in evidence similar transactions occurring on December 20 and 21, with respect to which appellant and Akin could be separately indicted and tried. As said by the Supreme Court of Vermont in State v. Coomer, 105 Vt. 175, 163 A. 585, 587, 94 A.L.R. 1038: "A respondent is entitled to know before he makes his defense what specific acts of his the state relies upon as constituting the offense charged against him in order that he may properly meet the charge. A conviction cannot be sustained upon a different theory than that on which the case has been tried. State v. Mason, 98 Vt. 363, 366, 127 A. 651. Where one offense is charged, and the evidence shows separate and distinct transactions, and either of them would support the charge in the complaint, the state is required to elect upon which it will rely for conviction. State v. Field, 95 Vt. 375, 379, 115 A. 296; State v. Barr & Pianfetti, 78 Vt. 97, 62 A. 43."

See also the following: McCreary v. Commonwealth, 163 Ky. 206, 173 S.W. 351; Richardson v. Commonwealth, 166 Ky. 570, 179 S.W. 458; Jackson v. Commonwealth, 198 Ky. 149, 248 S.W. 242; State v. Duncan, 82 Mont. 170, 266 P. 400; Smith v. State, 20 Okl.Cr. 124, 201 P. 663; State v. Hilberg, 22 Utah 27, 61 P. 215; Elam v. State, 26 Ala. 48; Pope v. State, 137 Ala. 56, 34 So. 840; Herbert v. State, 201 Ala. 480, 78 So. 386; State v. Bates, 10 Conn. 372; 16 C.J. 863, Criminal Law, § 2177, and 23 C.J.S. 438, Criminal Law, § 1044 d.

■ The case submitted to the jury by the government in its proof of the charges set forth in each count of the indictment had to do with specific concealments and specific sales on October 27, 1944, and on

December 12, 1944. Under such circumstances, evidence to show similar transactions occurring on December 20 and 21 was wholly irrelevant and prejudicial. Neither system nor intent was an essential element of the offense with which appellant was charged.

The judgment appealed from is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.