**CRAIN et al. v. UNITED STATES.**

No. 11094.

Circuit Court of Appeals, Fifth Circuit.

April 10, 1945.

Bart A. Riley, of Miami, Fla., for appellants.

H. S. Phillips, U. S. Atty., of Tampa, Fla., and Fred Botts, Asst. U.S. Atty., of Miami, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellants were convicted under an indictment charging them with conspiracy to violate 18 U.S.C.A. § 415, by agreeing that they would unlawfully transport or cause to be transported in interstate commerce from Miami to Chicago and from Miami to certain other cities, named and unnamed, outside of the State of Florida, certain moneys and currency issued by the United States of America, of a value of $5,000 or more, which said moneys had theretofore been stolen, feloniously converted, and taken feloniously by fraud, with intent to steal, from one Ida Williams. They were sentenced to imprisonment in the penitentiary for five years and fined $10,000 each. On appeal here they rely for reversal on four assignments of error, only two of which, in our view of the case, need be considered. They are: (1) The indictment is defective, and (2) the evidence is insufficient to support the verdict.

The three appellants were, according to their attorney, "confidence men" or "wire tappers." By resorting to the old race-horse-confidence swindle, including reports of large winnings at a nonexisting, exclusive gambling club in Miami, they in-

duced Mrs. Ida Williams, who, with her husband, was on a winter trip to Miami, to place bets at the club. In due course, defendant Crain and the Williamses placed a bet at the club and "won" about $300,000 on the race. The club, however, would not pay off until the winners demonstrated that they could have paid their wager had they lost. Mrs. Williams thereupon journeyed to Philadelphia, procured $31,000 in bills of large denominations, and returned to Miami. The money was given to Crain to take to the club to demonstrate paying ability, but, while away, Crain through a "misunderstanding" bet the whole and lost it. Upon the promise that Crain would meet them in Baltimore and return their money, the Williamses were induced to leave Miami. The meeting in Baltimore was postponed for several days by telegraph, but, when the appointed day passed and Crain did not appear, the lingering hope of Mrs. Williams for the recovery of her money faded and died.

That $31,000 in money and currency was taken from Mrs. Williams by fraud, trickery, and dishonest means is not denied. That the laws of the State of Florida were violated is admitted. Reversal is asked on purely legal grounds, and that brings us to a consideration of the alleged defect in the indictment and of the sufficiency of the evidence to support the verdict.

While the indictment charges unlawful conspiracy to transport or cause to be transported stolen money in interstate commerce of a value of $5,000 or more, appellants point out that the fourteen overt acts set forth therein are not alleged to have been committed in furtherance of said conspiracy or to carry said conspiracy into effect; and appellants urge that the indictment, to charge a violation of the applicable statutes,* must charge not only an unlawful conspiracy but that one of the parties "did an act to effect" its object; that when such act is done, and only then, do all parties to the conspiracy become liable. The indictment, after reciting the conspiracy, avers:

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present that after the formation of said unlawful agreement, confederation and conspiracy, and while the same was still in full force and effect, the said defendants, or some one or more of them severally, did willfully, knowingly and feloniously, at the times and places and in the manner herein set forth, do and commit the several overt acts hereinafter mentioned in connection with their names." (Here follows a description of the fourteen overt acts.)

With reference to an overt act, Section 418a, Title 18, U.S.C.A. provides: "and do any overt act toward carrying out such unlawful agreement, confederation, or conspiracy," and language of the same import is embodied in the General Conspiracy statute, Section 88, Title 18, U.S.C.A.

The alleged defect in the indictment was raised by motion in arrest of judgment. The indictment informed appellants of the nature of the charges against them. It was sufficient to put them on notice that the overt acts referred to have to do with the unlawful agreement confederation, and conspiracy set forth therein, and to form the basis for a plea of double jeopardy. It placed appellants in position to prepare fully for the trial and gave them the information necessary to enable them to conduct intelligently their defense. Doubtless for these reasons no contention is made that appellants were prejudiced in their defense by the defect referred to.

■ A defect in the indictment, such as the one under consideration, raised by motion in arrest of judgment after trial and conviction may not receive the same con-

---

* 18 U.S.C.A. § 415:

"Whoever shall transport or cause to be transported in interstate or foreign commerce any goods, wares, or merchandise, securities, or money, of the value of $5,000 or more theretofore stolen, feloniously converted, or taken feloniously by fraud or with intent to steal or purloin, knowing the same to have been so stolen, feloniously converted, or taken, * * *."

18 U.S.C.A. § 418a:

"If two or more persons enter into an agreement, confederation, or conspiracy to violate any provision of sections 413–419 of this title, and do any overt act toward carrying out such unlawful agreement, confederation, or conspiracy, such person or persons shall be punished * * *."

18 U.S.C.A. § 88:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined * * *."

sideration as when raised by demurrer prior to trial. The defect complained of is an informal and imperfect allegation of an issue of fact and falls within the curative provision of Section 391, Title 28, U.S.C.A., which requires United States Courts in any case, civil or criminal, to give judgment after an examination of the entire record before the court "without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." See also the provision of Section 1025, Revised Statutes, 18 U.S.C.A. § 556, to the same general effect.

■ The court below in overruling the motion in arrest of judgment committed no error. Cf. Hagner v. U. S., 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Rosen v. U. S., 161 U.S. 29, 16 S.Ct. 434, 480, 40 L.Ed. 606; U. S. v. Momsen, 7 Cir., 115 F.2d 635, 637; Gay v. U. S., 5 Cir., 12 F.2d 433.

■ The contention that the evidence was insufficient to support the verdict was raised by a motion for a directed verdict at the close of the evidence, and by a motion for a new trial following conviction. The gist of the charge against appellants is unlawful conspiracy to transport or cause to be transported in interstate commerce certain moneys of the United States stolen from Mrs. Ida Williams, having a value of $5,000 or more. Interstate transportation must be involved in the conspiracy to support a conviction. There is no evidence in the record to sustain such a charge. Neither of the appellants took the witness stand, and no witness testified to knowledge of any agreement between them, express or implied, to transport or cause to be transported stolen money of the value indicated in interstate commerce. No act of appellants tending to evidence such agreement is shown.

On March 18, 1944, defendant Wentz was handed the $31,000 by Mrs. Williams, and he immediately gave the money to Crain. Crain left his room in Miami, Florida, on March 19, and entered his safe deposit box at West Palm Beach, Florida, on March 20. He is shown to have paid a bill of $125 in Minneapolis on March 22, and to have entered his safe deposit box there on March 23. This evidence clearly indicates that he left Florida almost immediately after Mrs. Williams parted with her money. When arrested in Minneapolis, he had $2650 in a safe deposit box; on his person he had $80 in cash and receipts showing payment of $95 for an overcoat, $3.60 rent on a safe deposit box, $75 to an attorney, $123.27 to his hotel, and $125 to his tailor—a total of something over $3151. Wentz was arrested in Miami on April 7. His wife had in her purse $1700 in cash, and a $100 bill was found sewed in the lining of Wentz's coat sleeve. He stated at the time of his arrest that he was on the point of leaving Miami for North Dakota, by way of Ft. Worth, where he expected to contact his draft board. It is also in evidence that a few days prior to his arrest, on telephone instructions from defendant Kennedy, a Mrs. Ewing in Atlanta, Georgia, had secured a Georgia license for a Chevrolet car in the name of E. Wentz, Kennedy stating at the time that Wentz would be in Atlanta shortly and would stop at the Kimball house. Kennedy was arrested in Miami on April 7 and stated that he was planning to leave the city to go to Atlanta, and had he not been arrested he would have been on his way to Atlanta within a few hours. It is also in evidence that a few days prior thereto he had telephoned Mrs. Ewing in Atlanta and had her secure for him a Georgia automobile license for the Buick car he was then driving.

■ The Government relies upon this evidence to establish the conspiracy charged, viz.: That appellants agreed to transport or cause to be transported in interstate commerce moneys stolen from Mrs. Williams of a value of $5,000 or more, the argument being "that a thief does not go off and leave the fruits of his crime." This evidence is purely circumstantial. To justify a jury in finding a verdict of guilty based thereon, it must not only be consistent with the guilt of the defendant, but must be inconsistent with any other reasonable hypothesis of innocence. The moneys found upon Crain in Minneapolis and upon Wentz in Miami were considerably less than the sum of $5,000, and none of the moneys so found corresponded in denomination with the moneys secured from Mrs. Williams. The fact that one of the appellants had left Miami and journeyed to Minneapolis, and the other two were on the point of leaving Miami for points in other states when arrested, does not show unlawful agreement to transport or cause to be trans-

618

ported in interstate commerce. stolen moneys of a value of $5,000 or more.. The stolen money might have been lost in gambling or used to pay debts owed by the parties, or, for that matter, deposited somewhere in Florida for safekeeping. The evidence likewise fails to show any overt act in connection with the alleged conspiracy. We must conclude, therefore, that the evidence fails to support the verdict and the motion for a directed verdict at the close of the evidence should have been granted.

The judgments appealed from are reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.