## BUCHANAN v. UNITED STATES.
## ROBERTS v. SAME.
### Nos. 13474, 13475.

Circuit Court of Appeals, Eighth Circuit.
Nov. 5, 1947.

Rehearing Denied Dec. 17, 1947.

Arthur L. Adams, of Jonesboro, Ark. (Joe Clay Young and Denver L. Dudley, both of Jonesboro, Ark., Theodore Lockyear, of Evansville, Ind., J. M. Willemin and Eugene Sloan, both of Jonesboro, Ark., and S. L. Richardson, of Walnut Ridge, Ark., on the brief), for appellants.

W. H. Gregory, Asst. U. S. Atty., of Little Rock, Ark. (James T. Gooch, U. S. Atty., of Little Rock, Ark., on the brief), for appellee.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellants in these cases, Buchanan and Roberts, were tried and convicted by a jury and sentenced upon Count One of an indictment which count charged them and two others named, respectively, Collins and Clark,[1] with conspiring at Jonesboro and other places in Arkansas, and at named places in Missouri, and at Cairo, Illinois, to commit an offense against the United States,[2] that is to violate 18 U.S.

---

[1] Clark had not been apprehended at the time of trial.

[2] Contrary to 18 U.S.C.A. § 88.

C.A. § 415, which denounces (i.a.) the transportation in interstate commerce of stolen money of the value of more than $5,000 knowing the same to have been stolen and to have committed certain overt acts to effect the object of the conspiracy.[2] In substance that object was charged to be the transportation from other states to places within the jurisdiction of the District court in Arkansas of money of the value of more than $5,000, which the conspirators planned to obtain by perpetrating in other states a swindle in which they would induce the victims to believe that the perpetrators had a machine and materials with which they would make counterfeit paper money by applying chemicals and pressing genuine bills upon blank pieces of paper of corresponding size, inducing the victims to furnish the genuine money and then stealing and making off with the victims' money in amounts of more than $5,-000.

At the conclusion of all the evidence the defendant Collins was acquitted on motion, and these appellants orally moved for directed verdict in their favor on the grounds that the jurisdiction of the court was not shown and that there was no substantial proof to show conspiracy to transport money of the value of $5,000 or more in interstate commerce. The motion was denied and the ruling is assigned as error. The points, more fully and formally stated, were repeated and pressed in a motion for arrest of judgment and a motion for new trial which were overruled.

■ The statute of the United States, which it was charged the appellants conspired to violate, is an exercise of the power of Congress to regulate interstate commerce, and the only basis upon which the federal jurisdiction was invoked under it against appellants was that they conspired to transport stolen money, knowing it to be stolen, in the required amount in such interstate commerce, and committed certain overt act to effect that object. The jurisdiction of the District court in Arkansas in turn was limited territorially. Upon the trial of the charge against the appellants proof that either the alleged conspiracy or an alleged overt act to effect the object thereof, or both, occurred in Arkansas was required to establish jurisdiction of the federal court in that state. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Robinson v. United States, 8 Cir., 1909, 172 F. 105; Chew v. United States, 8 Cir., 1925, 9 F.2d 348.

■ Our examination of the record convinces that there was no evidence that these appellants either entered into a conspiracy in Arkansas to transport stolen money in interstate commerce, or that they committed any overt act in that state to effect such a transportation of stolen money. There was evidence that they appeared in a car bearing a license issued to appellant Buchanan with a Jonesboro, Arkansas, sticker on it, at the town of Pinckneyville, Illinois, on September 11, 1944, and there made contact with one Jack Tallo and that they stated they had come from Jonesboro; that they induced Jack Tallo to "get together $9,200" in bills of various denominations and take it to Cairo, Illinois, and that they there got the money away from him, stole it and made off with it by means of the form of swindle outlined above. Evidence was also received to the effect that on a different occasion in a transaction in no way connected with the swindling of Jack Tallo, on a date about 18 months prior to that transaction, one of the appellants, namely, Roberts, acting in concert with others not named in this indictment, perpetrated the counterfeit money swindle upon one William Elmer Rouse at Cairo, Illinois, and by means of the swindle there obtained and stole $5,200 from Rouse. Evidence was also received to the effect that shortly after the swindling of Jack Tallo the appellant Roberts and others not identified as defendants in the indictment, at Cairo, Illinois, cheated one Johnnie Jones, a colored man, out of three thousand dollars by means of a different kind of swindle. Jones was there induced to part with his money for liquor to be delivered to him at a certain place in or near Cairo, Illinois, where he was kept waiting for the liquor which never appeared and his money was stolen.

But the record is searched in vain for any scintilla of evidence to show in respect of any of the swindles which were perpe-

---

[2] Contrary to 18 U.S.C.A. § 88.

trated what became of the money of the several victims after the swindlers got possession of it. There is nothing but conjecture, surmise or speculation that they may have transported it from where they got it into the state of Arkansas, or that they concertedly, or even any one of them individually had the intention to transport it there.

The trial court recognized clearly that there was no evidence of transportation of stolen money into Arkansas. The indictment as it was laid and stood throughout the trial included a count number II which charged the defendants with the substantive offense of transporting the stolen money obtained through the swindles into Arkansas and within the limits of the territorial jurisdiction of the court, but the court sustained the motion to dismiss that count for want of evidence to support it. The court stated, "There was no evidence showing they brought it [the stolen money] over into this state." Although there was evidence that one of the appellants, Buchanan, was seen at Jonesboro, Arkansas, by the local sheriff and a deputy within the venue of the indictment shortly after the Tallo swindle, he was not shown to have any of the stolen money in his possession at that time. No consociation of the appellants in Arkansas was shown either before or after the swindles. There was no proof whatever that the conspiracy to perpetrate the swindles included an intention on the part of the conspirators to transport the proceeds into the state of Arkansas.

It may be assumed that the acts proven against these appellants were criminal and punishable by the states in which they were committed, but there being no proof of either a transporting or conspiracy to transport stolen money or any overt act to effect such transportation within the venue of the indictment, the federal court in Arkansas had no jurisdiction.

The case may not be distinguished as to controlling principles from Crain v. United States, 5 Cir., 148 F.2d 615, 617. The accused there were indicted in Florida under the same federal statutes as are here involved. They were charged with conspiring contrary to 18 U.S.C.A. § 88, to violate 18 U.S.C.A. § 415, denouncing the transportation of stolen money in interstate commerce, and to have committed acts to effect the object of the conspiracy, and the evidence was that the accused had perpetrated a shocking swindle upon a Mr. and Mrs. Williams at Miami, Florida, by means of which the accused there stole a large amount of money from the victims. It was shown that after the swindlers had gotten the money one of them went to Minneapolis, Minnesota, and was arrested there, and the other two were arrested in Florida as they were about to go to other states. None of them was shown to have the stolen money in his possession when arrested. The proof of the swindle was clear, but there, as here, the basis for federal jurisdiction, that is, proof of an actual or an agreed upon transportation in interstate commerce of the money stolen in an amount in excess of $5,000 and an overt act to effect that object, was lacking. It was argued there, as in this case, "that a thief does not go off and leave the fruits of his crime," but the court, as we think, rightly refused to permit such a mere conjecture to take place of proof. Perhaps swindlers who obtain large amounts of illicit plunder in cash money keep it on their persons after they leave the scene and make their public appearance before the police who know them well. But maybe they hide it first. If in this case appellants told their victim Jack Tallo when they first made contact with him in Pinckneyville, that they came from Jonesboro and had a Jonesboro sticker on the car they rode in, possibly the fact was that Buchanan carried the money from Cairo, where it was stolen, to Jonesboro, where he was seen in front of the sheriff's office. But unless the fact that he carried it along with him was proved, it has to be conjectured. The federal law requires proof beyond reasonable doubt, and the mere open appearance of a man who has stolen money through a swindle in a town more than a hundred miles away is not proof to convict him of transporting the stolen money to the town, nor is it proof that others with him in the swindle conspired to have it transported to the town. There was no proof to support the contention of the Government that there was a "headquarters" in Arkansas where

**18**

the swindles were planned and the proceeds handled. The decision in the Crain case was that the motion for directed verdict should have been granted and the conviction was reversed. Cf. Pines v. United States, 8 Cir., 123 F.2d 825. We are in accord with the court's reasoning and conclusion in that case, and being satisfied that there was no substantial evidence here of conspiracy in Arkansas to transport the stolen money in interstate commerce, nor of any overt act in that state to effect such transportation, the judgment appealed from must be reversed.

Reversed and remanded.