### Richardson v. Commonwealth.

(Decided November 5, 1915.)

Appeal from Estill Circuit Court.

1. Criminal Law—Trial—Crime Other Than One Charged in Indictment—Evidence of, When Admissible.—In a criminal prosecution it is, ordinarily, incompetent to prove that the accused has committed an offense other than that for which he has been indicted and is being tried. There are, however, a few exceptions to this general rule, applicable to cases in which it is necessary to es-

tablish the identity of the accused as the perpetrator of the crime under trial, or an intent or motive for its commission, or where other offenses are so interwoven with the one being tried that they cannot well be separated from it in the introduction of relevant and competent evidence, or when the independent offense was necessary to the perpetration or concealment of the crime for which the accused was on trial.

2. Criminal Law—Evidence of a Crime Other Than One for Which Accused is on Trial—When Admitted Court Should Admonish Jury as to Purpose of—Failure to Give Admonition—When Reversible Error.—When it is competent for the court to admit evidence of the accused's guilt of a crime other than the one for which he is being tried, it should admonish the jury as to the purpose of the admission of such evidence; and when such evidence has been objected to by the defendant, the failure to do so will constitute reversible error.

3. Criminal Law—Accomplice—What Constitutes.—An accomplice is one of two or more persons concerned in a felony. In order to make one an accomplice, it is necessary that his criminal participation in the crime charged be shown by evidence. To constitute a witness in a criminal prosecution an accomplice, he must sustain such a relation to the criminal act charged as that he could be jointly indicted with the accused for its commission.

4. Criminal Law—Peremptory Instruction—When Accused Not Entitled to.—In a criminal prosecution the accused is not entitled to a peremptory instruction, directing his acquittal by the jury, if there is any evidence, however slight, conducing to prove him guilty of the crime charged in the indictment.

CLARENCE MILLER and R. W. SMITH for appellant.

JAMES GARNETT, Attorney General, and ROBERT T. CALDWELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, Jonah Richardson, was separately tried in the court below under a joint indictment charging him, Harlow Richardson, Bertie Richardson and Arch Harris, with the crime of breaking into the depot of a common carrier, with intent to steal therefrom. The trial resulted in his conviction, the verdict of the jury fixing his punishment at confinement in the penitentiary not less than two years nor more than two years and a day. From the judgment entered upon that verdict he prosecutes this appeal. The errors assigned in the motion and grounds for a new trial, and for the reversal of the judgment, are: (1) The admission by the trial court

of alleged incompetent evidence; (2) its failure to give a peremptory instruction directing a verdict of acquittal; (3) failure to properly instruct the jury.

It appears from the bill of evidence that in August, 1914, some person or persons, at night, forcibly and feloniously broke into the depot of the Louisville & Nashville Railroad Company at West Irvine, and did steal, take and carry away therefrom several sacks of flour, and other merchandise of value. The Commonwealth's principal witness was one Luther Lunsford, who testified, in substance, that some days after the breaking into the depot he, at the request of appellant, went with him from the latter's home, five or six miles from West Irvine, to the residence of his (appellant's) brother-in-law and co-defendant, Arch Harris, near the West Irvine Depot, from which appellant and Harris, after nightfall, took the witness to a ravine in a nearby forest and there showed him several sacks of flour which appellant said he and his brothers, Harlow and Bertie Richardson, and brother-in-law, Arch Harris, had taken from the West Irvine depot and concealed in the ravine, and that they had obtained the flour by breaking into the depot at night; that appellant then opened the ends of the sacks by cutting them with his knife, and, after emptying the flour therefrom into other sacks which he had taken with him from his home, he threw the old sacks on the ground, and those into which the flour had been emptied were carried by him and the witness to appellant's home and emptied in a barrel used as a receptacle for flour. The discarded flour sacks left in the ravine bore the name of C. C. Carroll, a local merchant, who testified he had ordered flour from a wholesale dealer before the breaking into the depot and taking of flour therefrom, and that by reason of the commission of that offense a considerable quantity of the flour he had ordered was never received by him. Lunsford also testified that while he and appellant were in the ravine and engaged in transferring the flour from the sacks to those which appellant had carried with him, the latter told him he had on another occasion and prior to the taking of the flour from the depot, taken therefrom a dozen pairs of overalls and other merchandise, and that three pairs of the overalls were appropriated by appellant, three by each of his brothers and three by Harris, and that two of the men, whom he did not name, had also taken a hundred pounds

of meat. Lunsford further testified that a pair of the overalls was afterwards given him by Herman Richardson.

Another witness for the Commonwealth testified that late in the afternoon preceding the night of the August depot breaking, he saw appellant, Arch Harris, and a woman whom he took to be Harris's wife, coming down the Kentucky River in a boat, which landed in a secluded place near his (witness's) house, and that after leaving the boat the party, instead of taking the road customarily traveled, which leads from a point near where they landed to West Irvine and Harris's residence, took an untraveled and secluded route to get there, which made the distance to Harris's residence greater than by the customary road.

Yet another witness for the Commonwealth, living near Harris, saw appellant, Harris, and two other men he recognized as appellant's brothers, sitting on Harris's porch just after sundown on the night of the August breaking into the depot.

Charles Brinegar, a constable, testified in behalf of the Commonwealth that Luther Lunsford related to him the conversation he had with appellant in the ravine and thereupon he (Brinegar) procured the issual of a search-warrant and went with Lunsford, Hiram Canter and perhaps others to the place in the ravine where the conversation between appellant and Lunsford occurred, and there found the flour sacks which Lunsford testified had been discarded by appellant after transferring their contents to the sacks carried by him from his home; that the sacks bore the name of the local merchant mentioned, had been cut open at the end with a knife and had the appearance of having contained flour. After securing possession of the sacks Brinegar and his posse went to the residence of appellant, where they found a barrel containing fifty or sixty pounds of flour and a pair of overalls. About a hundred yards from appellant's house Brinegar found a box of tobacco in a chestnut stump. The tobacco contained the brand, "Index." Very near the stump in which the tobacco was found Brinegar discovered a man's tracks, which he followed a few feet to a large chestnut log, between which and a large slab resting against it he found a can of lard, a box of dry goods and a box of bacon, and, in the box with the meat, a pair of overalls.

Appellant's brother, Bertie Richardson, was arrested by Brinegar after leaving appellant's house, and, when arrested, was wearing a pair of overalls. The overalls worn by Bertie Richardson, those found in the box of meat and the pair found in appellant's house, were all of the same make and color and contained on the top button a dollar trade-mark. According to the evidence such overalls are called in West Irvine the "dollar mark" overalls. The flour sacks found by Brinegar in the ravine near the house of Arch Harris and the overalls and other articles of property found in and near the residence of appellant were taken in charge by the constable, introduced in evidence and identified as the same articles, or similar in character to, those taken from the depot.

It appears from the evidence that the depot at West Irvine was twice broken into, on each of which occasions property of value was taken from the building. The first breaking occurred July 23 or 24, 1914, and the second in the following month, August. According to the evidence, the dry goods, meat and overalls found at and near appellant's residence were taken from the depot at the time of the July breaking; the flour and tobacco at the August breaking. Appellant objected to Lunsford's testimony respecting his alleged confession that he had broken into the depot and taken property therefrom in July as well as in August, and moved that the Commonwealth be required to elect whether it would prosecute him for the July or August breaking; but both the objection and motion to elect were overruled and the evidence in question admitted, to which ruling appellant excepted. He also objected to the evidence introduced by the Commonwealth as to the finding at and near the home of appellant of the articles of property alleged to have been taken from the depot at the time of the July breaking, and all other evidence tending to connect him with the July breaking, but did not renew the motion to elect. However, all the evidence referred to was admitted over his objection, to which he excepted, and it is now insisted for him that this evidence was incompetent and highly prejudicial to his substantial rights.

In view of the rule of practice announced in McCreary v. Commonwealth, 161 Ky., 206, we deem it right to hold that as Lunsford, the first witness for the Commonwealth, directly testified as to appellant's possession of the flour

stolen from the depot at the time it was broken into in August, the Commonwealth must be regarded as having elected to try him for the August breaking, and, if correct in this conclusion, it must be determined whether the evidence as to the July breaking should have been admitted, and if so, for what purpose could it be considered by the jury. Ordinarily such evidence is incompetent, but as said in Romes v. Commonwealth, 164 Ky., 334:

"There are, however, a few exceptions to this general rule applicable to cases in which it is necessary to establish identity, or guilty knowledge, or intent, or motive for the commission of the crime under trial, or when other offenses are so interwoven with the one being tried that they cannot well be separated from it in the introduction of relevant and competent testimony, or when the independent offense was perpetrated to conceal the crime for which the accused is on trial. Morse v. Com., 129 Ky., 294."

In O'Brien v. Commonwealth, 115 Ky., 608, we held that in a prosecution of burglars for murder by a pistol shot, where the confession of one had disclosed pistols concealed by them after the crime, evidence of other burglaries by them, occurring before and on the night of the murder, and in which the pistols so found were stolen, was admissible to identify the guilty parties. In the opinion it is said:

"Bishop's New Criminal Procedure, vol. 1, section 1126, in discussing the admissibility of such evidence as that under consideration, says: 'The intent, knowledge or motive under which the defendant did the act charged against him, not generally admitting of other than circumstantial evidence, may often be aided in the proofs by showing another crime, actual or attempted. Then it is permissible.' Again, in section 1125, same volume, we find the following statement: 'Whole transaction. As explained under the doctrine of *res gestae,* wherever a part of a transaction appears in evidence the rest is thereby made admissible. So that the entire transaction wherein it is claimed the wrong in issue was done may be shown, though it includes, also, other crimes, and even though each transaction was a continuing one, or transpiring in parts on different days.' The same doctrine is recognized in Greenleaf on Evidence, vol. 1, section 53, wherein it is said: 'In some cases, however, evidence has been received of facts which happened before

or after the principal transaction, and which had no di·
rect or apparent connection with it, and therefore their
admission might seem, at first view, to constitute an ex-
ception to this rule.    But those will be found to have
been cases in which the knowledge or intent of the party
was a material fact, on which the evidence, apparently
collateral and foreign to the main subject, had a direct
bearing, and was therefore admitted * * *.' Again, in
volume 3, section 15, we find this further statement from
the same learned author: 'In the proof of intention, it
is not always necessary that the evidence should apply
directly to the particular act with the commission of
which the party is charged, for the unlawful intent in
the particular case may well be inferred from a similar
intent proved to have existed in other transactions done
before or after that time. * * *.' We find that this court
has in more than one case given its sanction to the rule
announced in the foregoing authorities.    In Tye v. Com-
monwealth, 3 Ky. Law Rep., 59, it is said: 'It was proper
to allow the Commonwealth to prove the number of at-
tempts by the defendant to commit the same offense, for
the purpose of establishing the alleged identity of the
accused. * * *.'    In Thomas v. Com., 1 Ky. Law Rep., 122,
appellant was on trial for effecting an entrance into a
dwelling with the intention of stealing.    Previously a
store had been broken into and goods stolen, and the
manner in which the entrance was effected gave strong
evidence that the appellant was concerned in the prior
breaking into the store.    Evidence of the first breaking
was admitted to show the appellant's intention to steal
in entering the house.    Held, 'That, in admitting such
evidence of the first breaking, the court did not assume
that the appellant was guilty of that crime; but the evi-
dence was such as to warrant the court in allowing the
facts to go to the jury, not as evidence that the appel-
lant broke into the store, for that was abundantly proved
without, but as evidence of his intention, and such evi-
dence was properly admitted for that purpose. * * *.' ''

Here the necessity for proving the motive can hardly
be said to have existed, because the mere breaking into
the depot and the taking of the goods therefrom proved
beyond doubt the motive actuating the commission of the
crime; but the necessity for establishing the identity of
appellant as the person or one of the persons who broke
into the depot in August, did exist, and the confession

he made to Lunsford of his participation in the first crime, namely, the breaking into the depot in July, as well as that of the August breaking, for which he was under trial, made it permissible for the Commonwealth to prove in corroboration of Lunsford's testimony as to the confession, and of the confession itself, the facts appertaining to the first offense as well as the last. This corroboration was furnished by the finding at his house of the flour, and, at the place where he had discarded them, of the sacks in which he confessed to have taken it from the depot at the time of the August breaking; and also by the finding in and near his house of the overalls, meat, tobacco and other property which, in his confession to Lunsford, he admitted taking from the depot at the time of his breaking therein in July. Appellant, having admitted in the one conversation and by a single confession his guilty participation in the two crimes, cannot complain of the connection given them by the evidence, or confine the Commonwealth's evidence to so much of the conversation as constituted a confession of his guilt of the crime committed in August. The Commonwealth had a right to prove the entire confession and conversation on the subject.

But while we agree with the trial court as to the competency of this evidence, we concede the soundness of appellant's contention that the court, upon or after overruling appellant's objection thereto, should have advised the jury as to the purpose of its admission, and admonished them that they could not consider it as conducing to prove his guilt of the August breaking into the depot, for which he was being tried, but that it might be considered by them, in connection with all other evidence in the case, only for the purpose of determining whether or not he had a motive for the commission of the crime, committed in August, or of identifying him as a participant therein. Bess v. Commonwealth, 118 Ky., 858.

It is apparent that appellant's complaint of the failure of the court to give the peremptory instruction directing his acquittal cannot be sustained. There was abundant evidence of his guilt.

It is further apparent that appellant's third and final contention must likewise be rejected. This contention

rests upon the theory that the witness Lunsford was an accomplice of the appellant in the commission of the crime charged and that his testimony was uncorroborated, therefore the peremptory instruction should have been given by the court. Although unauthorized by the evidence, the court instructed the jury that a conviction could not be had upon the testimony of Lunsford unless corroborated by other evidence tending to connect appellant with the offense; and the corroboration would not be sufficient if it merely showed that the offense was committed and the circumstances thereof.

An accomplice is one of several equally concerned in the commission of a felony. There is in this case no evidence whatever connecting Lunsford with the commission of the crime for which appellant was indicted. Indeed, it appears from his testimony, which in that particular is uncontradicted, that he had not heard of the depot's having been broken into, either in July or August, until told of it by appellant, at the time they went for the flour that the latter had taken from the depot. At most, the evidence only shows that Lunsford aided him in removing the flour from the place of concealment to his home, with knowledge of the fact that it had been stolen from the depot by appellant. If appellant had been indicted for the larceny of the flour, instead of breaking into the depot with intent to steal and take property therefrom, it might be claimed that Lunsford was connected with the commission of the offense as an accomplice and accessory after the fact, although it appears that the crime had been committed and the immediate asportation of the flour effected more than a month before appellant was assisted by him in removing it from the place of concealment to the home of the former. However, it is useless to speculate as to this matter, for the indictment is not for larceny nor for the receiving of stolen property with guilty knowledge of its having been stolen, but for the statutory offense arising out of the felonious breaking into the depot with intent to steal and take therefrom property of value. It is manifest, therefore, that Lunsford was not an accomplice in the commission of the crime charged. In Sizemore v. Commonwealth, 10 R. 1, we held:

"It is not the mere fact that a person is charged with a crime in connection with another person that makes

him an accomplice. In order to make him an accomplice, it is necessary that his criminal participation in the crime *charged* should be shown by the evidence."

Here Lunsford was not even charged with the crime for which appellant was indicted, and there was no evidence conducing to show his criminal participation in its commission. In White v. Commonwealth, 5 R., 318, it was held that in order to constitute a witness an accomplice he must sustain such a relation to the criminal act as that he could be jointly indicted with the defendant for its commission.

The instructions of the court seem to have fairly advised the jury of all the law applicable to the case; but because of the error of the court in failing to admonish the jury of the purpose for which the evidence as to the first breaking into the depot, might be considered by them, the judgment is reversed and cause remanded for a new trial consistent with the opinion.