## Sparks v. Commonwealth.

(Decided February 2, 1923.)

## Appeal from McCracken Circuit Court.

1. Assault and Battery—Degree of Offense Denounced by Section 1166, Ky. Stats.—Instructions.—Assault and battery is a degree of the offense of wilfully striking another with a deadly weapon with the intention to kill him as denounced by section 1166 of the Kentucky Statutes, and where the evidence authorizes it an

instruction submitting defendant's guilt of the lesser offense should be given.

2. Assault and Battery—Intent—Presumption.—The offense for which defendant was indicted and convicted was an aggravated assault at common law and it was not necessary for the prosecution to prove the intent with which the assault was made, since, if done by a person of sound mind, the unlawful intent would be presumed, but which doubtless could be disproved by defendant, in which case the burden would be upon him to do so.

3. Assault and Battery—Willful Intent to Kill with Deadly Weapon —Exclusions.—The statute carved out of such an assault certain elements, to-wit: a willful intention to kill and the commission of the assault with a deadly weapon and still left the offense, as at common law, without those elements as constituting only a misdemeanor. It was therefore not error, but proper practice to expressly exclude those elements in submitting to the jury the lower degree of the offense, since such exclusion is necessary to describe that lower degree, and by doing so the court does not cast the burden upon defendant to prove the exclusions.

REED & BURNS for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and defendant below, Ray Sparks, was convicted in the McCracken circuit court and punished by confinement in the penitentiary for one year under an indictment returned therein accusing him of the offense of wilfully and maliciously striking another with a deadly weapon with the intention to kill him but from which the one struck did not die, which is one of the crimes denounced by section 1166 of the Kentucky Statutes. His motion for a new trial was overruled and he has appealed, insisting through his counsel as grounds for reversal (1), error of the court in refusing to grant the new trial for newly discovered evidence, and (2), error, in giving to the jury instruction number 2.

The prosecuting witness upon whom the alleged felonious assault was committed was Dave Warren, and the assault occurred one evening after dark in the railroad yards near Paducah, at which place defendant, according to Warren and other witnesses who testified for the Commonwealth, approached the witness from behind and said to him, "Dave, wait a minute," whereupon the witness, who was then engaged as a switchman for one

of the railroads running into Paducah and who then had on his gloves, with a lantern in one hand, turned and faced the defendant, who was accompanied by two other men, one of whom was named Calhoun, and that the latter asked him, "Did you tell anybody I was drunk?" The witness answered in the negative but stated that he told one McGregor that Calhoun and his companions, among whom was the defendant, were drunk while on duty as guards during the strike of the railroad shopmen then prevailing, and over whom McGregor was foreman; whereupon Calhoun said "You are a G—d— liar and I can whip you if you did say it." At that juncture defendant, who was behind or to the side of witness, struck him with a large pistol which he then had in his hand and knocked witness senseless, and after he was knocked down defendant again struck him once or twice and left him lying upon the railroad track upon which a number of freight cars were backing not far distant. Witness was removed from the track by some of those who witnessed the assault and by others who immediately arrived. The prosecuting witness was corroborated by other witnesses who testified for the Commonwealth, but defendant and his two companions testified to a state of facts tending to show that the prosecuting witness was the aggressor and that defendant struck in the exercise of his right of self-defense. Defendant also denied that the witness had on gloves, though that fact is quite conclusively established. Defendant also denied striking the witness more than one time although there were three severe, separate and distinct wounds on his head.

1. The foundation for the first ground relied on for a reversal is an affidavit of an alleged newly discovered witness who detailed a conversation with the prosecuting witness, or a statement made by the latter in affiant's presence, contradicting the testimony given on the trial by the witness and who stated, according to the affiant, that the difficulty occurred in a different manner from that testified to by him on the trial, which clearly was impeaching in its nature and for which character of newly discovered evidence a new trial will not ordinarily be granted as this court has held in an unbroken line of decisions. But, independently of that fact, there were filed, on the motion for a new trial affidavits of other witnesses disclosing alleged misconduct on the part of the prosecuting witness by conversing with the

jury, or members thereof, while the prosecution was being tried and in which the jury was urged to not let defendant escape but to send him to Eddyville, as well as making other alleged similar and highly prejudicial remarks. The record discloses that the court set a day for trying the motion for a new trial at which evidence was heard, which was taken down by the stenographer, but it was not transcribed or made a part of the record. After that hearing the motion was overruled, and in the absence of the evidence heard on the motion we will presume that it was sufficient to dispel the grounds relied on as contained in all of the filed affidavits, including the one of the alleged newly discovered witness; and for this reason also ground (1) can not be considered.

2. The court submitted to the jury, by instruction number 1, the guilt or innocence of defendant as charged in the indictment and of which no complaint is made. Instruction number 2, of which complaint is made, said:

"If the jury do not believe from the evidence to the exclusion of a reasonable doubt, that the defendant committed the offense described in instruction No. 1, and they do believe that at the time and on the occasion therein described, the defendant did not intend to kill said Dave Warren, and did not use said weapon in a manner reasonably and probably calculated to produce or bring about his death; or if they believe from the evidence that the weapon then used by the defendant, if one was so used, was not a deadly weapon, and the jury further believe from the evidence to the exclusion of every reasonable doubt that the defendant Ray Sparks in this county and within 12 months next before the finding of the indictment, to-wit, on the 26th day of September, 1922, did unlawfully assault, beat and bruise the said Dave Warren with a pistol, from which said beating, or bruising, if such there was, the said Dave Warren did not die, then the jury will find the defendant guilty of an assault and battery, an offense included in the indictment, and fix his punishment at a fine within their reasonable discretion or by imprisonment in the county jail in their reasonable discretion, or both by fine and imprisonment in their reasonable discretion, and they may say in their verdict that said fine and imprisonment or both shall be at hard labor."

The instruction is seriously criticized by learned counsel because it is claimed that its phraseology cast the burden upon the defendant to prove the intention with

which he committed the assault and to prove that the
weapon he used was not a deadly one; and we are cited
to some text writers, as well as opinions, stating that
at common law the intention with which an assault is
committed is not a necessary element of the offense and
need not be proven, since the intent is necessarily em-
braced in the wrongful act, provided always, of course,
that the defendant possesses sufficient mind to be re-
sponsible for his acts; that with such a person all that
is required is to show the commission of the act from
which the intent will be presumed. But, even under that
definition, we are inclined to the opinion that the pre-
sumed intent could be rebutted by the defendant, the
burden of which would be upon him.

But, whether so or not, the offense for which defend-
ant was indicted and convicted was, before the enactment
of section 1166 of the statutes, but an aggravated assault
punishable only as a misdemeanor. The statute carved
out of the common law assault certain elements, to-wit:
the wilful intent to kill, and the use of a deadly weapon,
and said that when those elements existed the assault
which had theretofore been only a misdemeanor should
be punished as a felony. The assault committed *without*
those elements remained a misdemeanor as at common
law and likewise remained a degree of the felony which
the statute created. Allison v. Commonwealth, 196 Ky.
140, and cases therein cited.

It then being the duty of the court where there is
evidence to sustain it, to submit to the jury defendant's
guilt of the lesser offense, it must necessarily do so in
language defining it and submitting to the jury the facts
constituting it. Those facts consist of what remains of
the common law misdemeanor after carving therefrom
the statutory felony, which remainder is the assault
without the intention to kill and without a deadly weapon.
We can conceive of no other way whereby the court could
properly submit the lesser offense. Neither can we sub-
scribe to the suggestion that in doing so the burden was
cast upon defendant to prove the absence of the elements
necessary to constitute the felony so as to reduce the
crime to a misdemeanor. Such absence is to be de-
termined by the jury upon all the evidence in the case.
Indeed, it is not uncommon for instructions in criminal
prosecutions to require the jury to disbelieve, under ex-
cluding language, certain facts before convicting, and it
has never been held that in so doing the burden was cast

upon defendant to prove the excluded facts. A notable instance in which the practice has continuously been followed and upheld is in the trial of an indictment for homicide, either murder or manslaughter, wherein the court in its leading instruction, after defining the submitted offense, always uses the expression "and not in his necessary self-defense." Comparing that character of instruction with instruction number 2 in this case, it was the same in substance as if the court had said: "and not with the intention to kill the said Warren, or if the weapon used by defendant was not a deadly one."

But above and beyond what has been said, it will be noted that defendant was found guilty of the larger offense. They were instructed that if they had a reasonable doubt as to the degree of the offense, if they believed beyond a reasonable doubt that one was committed by defendant, to find him guilty of the lesser one defined in instruction number 2, and surely under that instruction the jury arrived at the conclusion that they entertained no reasonable doubt as to the defendant not having committed the lessor offense and therefore found him guilty of the greater one about which they entertained no reasonable doubt.

Our conclusion, therefore, is that the criticism of instruction number 2 is not well taken and, there being no error appearing in the record prejudicial to defendant's substantial rights, the judgment should be and it is affirmed.