## Weber v. Commonwealth.

June 7, 1946.

Rehearing Denied October 4, 1946.

58

W. Clarke Otte for appellant.

Eldon S. Dummit, Attorney General, and Frank A. Ropke, Commonwealth Attorney, Lawrence S. Grauman, County Attorney, and Carl C. Ousley, Jr., Assistant Commonwealth Attorney for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

The judgment of conviction of assault and battery imposes a sentence of imprisonment in jail for four years and a fine of $5,000. A reversal is sought on the grounds (1) the admission of incompetent evidence; (2) excessive and unconstitutional punishment; and (3) improper argument of the Commonwealth's Attorney.

According to the evidence for the Commonwealth, during the evening of September 26, 1945, the defendant, John H. Weber, accosted R. Davis McAfee while he was adjusting his clothing in the toilet room of a roadhouse, known as Kenwood Inn, with the inquiry, "Do you recognize me?" to which he replied, "I don't believe I do. My name is McAfee." The defendant responded, "I am Johnny Weber. You plastered my name all over the newspaper," and, as McAfee testified, "with that it was like a blinding flash of light in every direction. I don't know what happened except that I was knocked out. You might say I was partially conscious. I have a hazy recollection of feeling like trying to reach up on things and catching hold of the wall, and the next thing I was lying

on the floor being kicked in the face. I never knew how many places I was struck. I regained enough consciousness to call for help, and the next thing I knew, the proprietor, or whom I learned since was the proprietor of the place, helped me up.''

McAfee's jaw was fractured; his nose broken; his teeth displaced; one·eye was badly bruised, became much swollen and protruded from the socket, and was permanently injured. He also suffered body bruises. He spent nine days in a hospital and was confined to his home for two weeks longer. It was sometime before he was able to resume his normal activities.

According to the defendant's evidence he had known McAfee four or five years. When he became a candidate for office in the previous primary election, McAfee had solicited his support and Weber had refused to give it. On this occasion he.addressed McAfee, ''Hello Dave,'' and began to joke him about his defeat. Whereupon, McAfee responded, ''I don't like your attitude,'' to which he replied, ''That is all right with me; I don't like yours.'' Following further expressions of mutual dislike, McAfee ''struck at me,'' and hit Weber ''just slightly.'' Then, he testified, ''We had a good fight.'' He denied knocking McAfee down or kicking him. The defendant was proved to have a bad reputation for veracity and morality, and witnesses introduced to sustain the defense were discredited by their own testimony and that of others.

The victim of the assault is a practicing attorney in Louisville. The defendant frankly responded to the inquiry as to his present occupation, ''I am a gambler.'' Upon cross-examination he elaborated his activities. It seems he specialized in handbook operations and race track gambling. The character or characteristics of the two men are revealed in the evidence which the appellant contends was erroneously admitted and its background. On July 17, 1945, during his candidacy for nomination as Commonwealth's Attorney, McAfee had made a speech over a local radio in which he criticised what he deemed to be the lax enforcement of the criminal laws. in Louisville. In the course of that speech he referred to the defendant Weber in vigorous terms as a criminal who had escaped punishment over a long period of time. He read a list of 25 offenses, with the dates, for which

Weber had been arrested. They included charges of murder; rape of girls under the age of consent (two); malicious shooting and wounding; store house breaking (two); grand larceny (two); conversion; setting up and operating gambling games (three); violating the narcotic law; operating an automobile without owner's consent; selling intoxicating liquor without a license (three); destroying private property, and assault and battery (six charges). In addition McAfee stated that Weber had been arrested many times for breach of the peace and disorderly conduct. The speaker said he would not say that Weber was guilty every time he was arrested but that he had received little or no punishment for any of these offenses and had come to believe himself to be above the law. There was much other language of like import. The speech had been reduced to writing and the part relating to Weber was read to the jury. It was also stated that it had been published in the Courier Journal and was the subject of an editorial in that newspaper.

The defendant vigorously objected to the reference to this speech in the opening statement of the Commonwealth's Attorney and to its introduction in evidence. The court clearly and explicitly admonished the jury as follows: "Let me say to you again, ladies and gentlemen, that ordinarily this evidence would be incompetent, especially the truth or falsity or correctness of anything Mr. McAfee may have said, or anything that may have been published as a speech, or the alleged speech—all of that would ordinarily be incompetent. You have no right to consider that, or to let that prejudice you against the defendant for any purpose whatsoever concerning any charge made against him, whether it was made against him or not. I am only allowing you to hear that evidence on account of the alleged remark that he is said to have made on the occasion of this assault for the purpose of illustrating, if you do believe it does illustrate, beyond a reasonable doubt, any motive he may have had for this alleged assault. You may consider it for that purpose, and for none other whatever."

Of necessity it must be presumed that the jury, in recognition of their oath to try the defendant according to the law and the evidence, obeyed the admonition as

to the purpose and effect of the testimony. Huddleston v. Commonwealth, 251 Ky. 172, 64 S. W. 2d 450.

The appellant, of course, recognizes the elementary rule that evidence pertaining to the commission of other offenses than that for which the accused is being tried is admissible for certain purposes, including that of showing motive. But he maintains that it is only where it is necessary to prove motive that the rule applies, and that such other offenses must be connected with the commission of the crime charged. It is pressed with much earnestness that this evidence was within those exceptions and limitations, for the fight was conceded and the offenses referred to in the statement had no connection with it, and its admission was prejudicial error. We can readily agree with the statement of law (Roberson, Ky. Criminal Law, Sec. 1805), but we cannot agree with its application. The cases specially relied on are different. In Raymond v. Commonwealth, 123 Ky. 368, 96 S. W. 515, evidence that a dwelling house of the prosecuting witness had been burned by some unknown person (although suspicion may have attached to the defendant) was admitted in his trial upon the charge of burning the witness' barn. Since the first arson was entirely collateral to the latter and had no bearing upon the guilt or innocence of the accused upon the charge for which he was on trial, it was held to be incompetent. Morse v. Commonwealth, 129 Ky. 294, 111 S. W. 714, is a case of embezzlement in which the very fact of taking and appropriating money to the defendant's own use established the crime, motive and intent being obvious conclusions from the act itself, and evidence of other and distinct offenses was irrelevant and unnecessary. Of like class in this respect is Richardson v. Commonwealth, 166 Ky. 570, 179 S. W. 458, where the charge was breaking into a railroad depot with intent to steal, and there was no necessity to prove a motive since the act of breaking and stealing spoke for itself. The offense of assault and battery is in an entirely different class. While an intent to commit an act may be presumed where there is evidence of an aggravated assault (Sparks v. Commonwealth, 198 Ky. 518, 249 S. W. 749), yet the questions are quite naturally raised as to whether the accused had some reason, apparent or real, for doing so, and in this case why he struck the man. Was it because McAfee

precipitated the fight by first assaulting him, as he claimed, or was it because of Weber's previously existing animosity? Motive is a principal fact and is often the manifest source and spring of criminal action. It is the inducement, cause or reason why the thing was done. Its presence or absence is always an important consideration and consequently a legitimate source of inquiry. Cassell v. Commonwealth, 248 Ky. 579, 59 S. W. 2d 544; Roberson, Ky. Criminal Law, Sec. 19. Once motive of either party to a fight is established, the jury may from that fact draw the conclusion as to the ultimate fact of who was the aggressor. Any evidence relevant to prove any material fact pertinent to the point in issue and which tends to prove the crime or offense charged ought not to be rejected merely because it tends to prove that at some other time the accused has been guilty of some other separate independent and dissimilar offense. Roberson, Kentucky Criminal Law, Secs. 437, 511, 512, 1800. Evidence of the mutual relations of the parties is relevant and competent so as to enable the jury to properly comprehend and give due weight to their acts and to help illustrate which one of them was the aggressor. McGowan v. Commonwealth, Ky., 117 S. W. 387. The evidence in this case is not that the defendant had committed any of the other offenses or crimes listed. It was not proof of commission of any other distinct crimes by the accused. It was merely that McAfee had said Weber had been arrested upon the many charges and had escaped substantial punishment. The real criticism was of the law enforcement officers. Weber's connection was incidental. But that was, nevertheless, reasonably calculated to have engendered ill feeling or hostility. Even though it tended to reveal a criminal record, it was admissible as evidence from which the jury could infer that the defendant resented the statement and the publicity, and that his resentment and desire to be revenged motivated and precipitated the vicious attack rather than that he struck in self-defense. The potential evil of the subject matter could not be permitted to outweigh the positive proof of a motive.

The defendant testified that he had no animosity against McAfee. He first testified that he did not know of his accusations and had not read anything in the newspapers about them, as he left about the middle of May,

two days after the racing season closed, and went to Detroit where he remained until the latter part of August. However, on cross-examination he contradicted himself, saying that he had returned to Louisville a few days before the election, which was held on August 4th, and also that he had been told by a number of people, including his mother, about his name having been mentioned over the radio by McAfee and published in the newspaper. He further added that the publicity did not hurt him because one "gets numb to anything" if he gets hurt so much, and that he considered the source as being that of a politician, and insisted that his fight with McAfee was not the result of it.

Quite naturally the appellant thinks the punishment meted out to him is excessive. The penalty, as we have said, is imprisonment in jail for four years and the payment of a fine of $5,000. It is claimed in brief that the defendant is not able to pay the fine and if compelled to serve it out he will be confined more than seventeen years. The force of the argument is lost by the fact that its payment has been secured by a supersedeas bond.

The appellant invokes the interdictions of the Federal and State Constitutions. The Eighth Amendment declares that "cruel and unusual punishments" shall not be inflicted. Section 17 of the Constitution of Kentucky declares that neither "excessive fines" shall be imposed, "nor cruel punishment inflicted." These restraints upon the powers of government find sanction in native justice. It is a right secured by Magna Charta and found in all state constitutions. The provision is generally regarded as directed to both the legislature and the judiciary. That in the Federal Constitution is confined in its operation to the Congress and the courts of the United States. 24 C. J. S., Criminal Law, sec. 1978. It is regarded as primarily relating to the kind and character or method of punishment, referring to inhumane or barbarous treatment or punishment unknown to the common law or which has become obsolete with the progress of humanitarianism, rather than to the severity in the amount or duration. But it would seem that most of the courts hold it covers that too. 15 Am. Jur., Criminal Law, Secs. 523, 535; 24 C. J. S., Criminal Law, sec. 1978, subsec. b; Cooley, Const. Lim., page 694. In the leading case of Weems v. United States, 217 U.

S. 349, 30 S. Ct. 544, 549, 54 L. Ed. 793, 19 Ann. Cas. 705, the Supreme Court declared: "It is a precept of justice that punishment for crime should be graduated and proportioned to offense," and laid it down that in order to justify a court in declaring any punishment to be cruel and unusual with reference to its duration it must be so proportioned to the offense committed that it shocks the moral sense of all reasonable men as to what is right and proper under the circumstances. No court has ever attempted to closer define the scope so far as we are aware.

This court has held the provision in our constitution as applicable both to legislative and judicial action. But we have never held an act of the legislature in conflict although the penalties were quite severe in relation to public injury or individual harm. Illustrative acts are those which fix the minimum penalty for assault with an offensive weapon with intent to rob at 21 years imprisonment and the maximum at death (Ky. Rev. Stat. 433.150; Tomlinson v. Commonwealth, 261 Ky. 186, 87 S. W. 2d 376), and which makes felonies of what would otherwise be petit larceny of the offenses of stealing chickens or other fowls of the value of $2, or a hog worth only $4, the maximum penalties being five years imprisonment in the penitentiary. KRS 433.250; Fry v. Commonwealth, 166 Ky. 670, 179 S. W. 604. And one who has committed those or other felonies on three successive occasions may be confined in prison the remainder of his natural life under the habitual criminal statute. KRS 431.190; Turner v. Commonwealth, 191 Ky. 825, 231 S. W. 519; Coleman v. Commonwealth, 276 Ky. 802, 125 S. W. 2d. 728. We have consistently held it to be within the discretion of a jury to fix any penalty within the maximum prescribed by the statute violated, and have declined to interfere with the judgment upon the ground of excessiveness where it was within the statutory limits. McElwain v. Commonwealth, 289 Ky. 446, 159 S. W. 2d 11.

In reference to the action of the courts and the trial of common-law offenses in which the punishment is not prescribed by statute but left to the discretion of the jury to fix at a fine in any sum of money or imprisonment in jail for any length of time, either or both, we hold that a jury may not act arbitrarily but must be controlled by the nature and the enormity of the offense, hence that

excessive verdicts, apparently given under the influence of passion or prejudice, will be set aside. Bottom v. Commonwealth, 98 Ky. 17, 32 S. W. 140. But we have also laid down a limitation upon our own powers by declaring that the court has no right to say a penalty is cruel and unconstitutional unless it clearly and manifestly so appears. Harper v. Commonwealth, 93 Ky. 290, 19 S. W. 737; Peacock Distillery Company v. Commonwealth, Ky., 78 S. W. 893. The fines assessed in Louisville & N. R. Co. v. Commonwealth, 231 Ky. 554, 21 S. W. 2d 981, and City of Ludlow v. Commonwealth, 247 Ky. 166, 56 S. W. 2d 958, were so regarded. But a fine of $5,000 for contempt of court was sustained in Commonwealth v. French, 130 Ky. 744, 114 S. W. 255, 17 Ann. Cas. 601, and a judgment of confinement in the county jail for two years and a fine of $3,000 for a like offense was affirmed in Feltner v. Commonwealth, Ky., 97 S. W. 433. We have recently affirmed a conviction and penalty of five years imprisonment in jail for an assault, based on a sexual offense. Lenahan v. Commonwealth, 301 Ky. 714, 193 S. W. 2d 163.

Our leading case on assault and battery is Cornelison v. Commonwealth, 84 Ky. 583, 2 S. W. 235, 242, in which a defenseless member of our Superior Court (abolished by the present Constitution) was violently assaulted by a former client with a cane and cowhide for what he wrongfully, and through grievous mistake, regarded as a breach of trust. In treating the subject of the penalties of the common law and the imposition by a jury of what may be regarded as excessive punishment, it was said: "Here no such question can arise (as imprisonment for life and depriving one of his entire estate); but a jury of 12 men, that has, since the existence of magna charta, been invested with the discretion, under the guidance of impartial judges, of passing on the personal liberty of the citizen, and of life itself, is called upon to fix in its discretion the extent of the punishment that shall be inflicted for the commission of aggravated assault and battery,—a tribunal connected with the administration of justice, that is always ready to protect those charged with offenses from any attack of arbitrary power. We know of no tribunal where such discretion could be more safely lodged. There is a manifest difference between the effect of an imprisonment

for high crimes and the punishment for a misdemeanor. The one is confined to a felon's cell at hard labor, while the other is required to pay a fine and imprisoned in the jail of his county.''

The judgment of three years imprisonment in jail and a fine of one cent was affirmed as not being disproportionate to the enormity of the aggravated assault.

The instant case presents all the evil elements of that case: of malice, brutality, cowardly and sudden assault upon a defenseless man and humiliation of the victim. And more. Had Judge Reid been guilty of the conduct Cornelison believed he had, there would have been provocation and mitigation. But there was no mistaken belief here and no degree of mitigation. There was not only legal malice but actual malevolence. There was the vicious motive of revenge against one who had dared to speak publicly of what he deemed to be lax law enforcement against a man with a long record of arrests. Motive, as we have said, is an essential fact and we have held it may be considered by the jury in fixing the punishment. Urban v. Commonwealth, 196 Ky. 770, 245 S. W. 511. The brutality of kicking the victim in the face when he was down and in a semi-conscious condition was probably not ignored; at least it need not have been. Perhaps also the jury took into account their justifiable belief that the defendant had not told the truth upon the witness stand in claiming personal association with the victim at saloons and gambling houses, and some of his own material contradictions to which we have alluded. These things, of course, do not enter into the offense itself, but they do reveal the nature and character of the man with whom the jury was dealing. They are legitimate considerations in fixing the penalty and consonant with the purpose of punishment as we shall presently note.

It is usually said that assault and battery is a lesser degree of an assault with intent to rob (KRS 433.150), the minimum punishment for which, as we have noted, is 21 years imprisonment and the maximum death; also of the felony of malicious wounding with intent to kill (KRS 435.170), the maximum penalty for which is 21 years imprisonment. All the usual elements of malicious wounding are present in this case except a deadly weap-

on, for an intent to kill may be imputed. But the injuries inflicted are greater than in many other cases coming under that statute and reviewed in this court. Had he used metallic knucks or other similar weapon, he could have inflicted no greater injury and might have been subjected to 21 years imprisonment. Perry v. Commonwealth, 286 Ky. 587, 151 S. W. 2d 377. And while hands and feet are not deadly weapons in the usual sense (McIntosh v. Commonwealth, 275 Ky. 126, 120 S. W. 2d 1031), they have sometimes been used to kill. See Maulding v. Commonwealth, 172 Ky. 370, 189 S. W. 251, where the defendant received life imprisonment for killing another by his hands and feet, and Smith v. Commonwealth, 228 Ky. 710, 15 S. W. 2d 458, where 13 years imprisonment was imposed for killing a man with his fist only. These references are made simply for the purpose of comparison and to show that had this defendant been charged with malicious wounding he might have been given a heavier penalty; also to direct the thought that the legislature—the direct representative of the people with power so to do—has provided more severe penalties for a number of similar offenses, and others of much less aggravation, brutality and effect. They at least afford measuring rods for juries and the judiciary, which has the power to determine ultimately whether a given penalty offends the constitutional interdiction of excessive fines and cruel punishment. Cornelison v. Commonwealth, supra.

The true purpose of punishing one for a violation of the laws against crime is not for the benefit of the person injured, but to protect the public and with the view of preventing further crime. Frazier v. Commonwealth, 291 Ky. 467, 165 S. W. 2d 33. When that and all the other elements are considered, we reach the conclusion that the punishment imposed by the jury in this case is not in conflict with the constitutional protection against excessive fines or cruel punishment.

The third ground submitted for a reversal of the judgment, that the Commonwealth's Attorney, the Honorable Frank A. Ropke, made prejudicial statements in his closing argument, may be disposed of quite summarily under the rule that the bill of exceptions does not show that he did so. The bill merely sets forth the defendant's motion for a new trial and affidavits filed in

support thereof, which are to the effect that the attorney had made certain remarks concerning the radio speech which were outside of the court's admonition as to the purpose of its admission, and counter-affidavits in denial. The Judge did not certify that the remarks were made. We have held that a bill of this form does no more than show the documents were filed and their contents, and does not constitute a record of what occurred otherwise. Cannon v. Commonwealth, 291 Ky. 517, 165 S. W. 2d 44; Coe v. Commonwealth, 299 Ky. 360, 185 S. W. 2d 533.

Perceiving no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.

Judge Sims dissenting.

I cannot agree with the majority opinion that the radio speech made by Mr. McAfee was admissible in evidence to show motive on appellant's part or that he was the aggressor in the affray. It is admitted by the majority that these other crimes with which Mr. McAfee said appellant had been charged and had escaped punishment had no connection with the offense for which he was then on trial.

It is almost puerile to say that this highly inflammatory evidence was admitted in its entirety for the purpose of showing motive or that Weber was the aggressor. Had that been the reason, the trial judge so easily could have admitted the bare fact that Mr. McAfee had attacked appellant in a political speech without reading to the jury all twenty-five crimes with which Weber had been charged, which ran the gamut of practically all the vicious and heinous offenses known to the law—from assault and battery through rape to murder.

This evidence in all its details could have been offered by the Commonwealth only for one purpose, and that was to so inflame the jury as to prevent the accused from receiving a fair and impartial trial. How effective was this evidence is eloquently reflected in the verdict fixing a fine of $5,000 and four years confinement in jail. While I cannot say such punishment runs afoul of sec. 17 of our Constitution as being excessive or cruel, I do say it was ample.

I feel that the majority is too optimistic when they

say that it must be presumed that the jury obeyed the admonition of the court not to let this evidence prejudice them against Weber. It could not have done otherwise than to have prejudiced the jury, as the severity of the punishment inflicted shows. No admonition could have removed the poison this evidence implanted in the minds of the jury, any more than "All the king's horses and all the king's men couldn't put Humpty Dumpty together again."

As is stated by the majority, intent may be presumed where there is evidence of an aggravated assault. Since this was certainly an aggravated assault, it was entirely unnecessary to prove motive or that Weber was the aggressor. In Brashear v. Com., 178 Ky. 492, 199 S. W. 21, and in Butler v. Com., 284 Ky. 276, 144 S. W. 2d 510, this court reversed judgments of conviction because there was admitted evidence that the accused had committed other crimes, which was introduced for the ostensible purpose of creating prejudice against him. In my judgment the Brashear and Butler opinions rule the case at bar. Admitting arguendo that such evidence is admissible, then its probative value is so negligible as compared with its prejudicial effect as to make it incompetent.

The law says that an accused is entitled to a fair trial regardless of what his character or reputation may be. To my mind this evidence was not only erroneously admitted, but was so prejudicial as to preclude appellant from having the character of trial the law guarantees him.