**STATE of Missouri, Respondent,**

v.

**Gale MIXEN, Carroll Lloyd, and
Harold Hanger, Appellants.**

**No. 51977.**

Supreme Court of Missouri,
Division No. 1.

April 8, 1968.

Norman H. Anderson, Atty. Gen., L. Michael Lorch, Asst. Atty. Gen., Jefferson City, for respondent.

Lester Watson, Richmond Heights, for appellants.

HOUSER, Commissioner.

Gale Mixen, Carroll Lloyd and Harold Hanger were jointly charged, each under the Habitual Criminal Act, § 556.280, RSMo 1959, V.A.M.S., with assault with intent to do great bodily harm, with malice. They waived a jury, were tried by the court and found guilty. Punishment of each defendant was assessed at seven years in the custody of the department of corrections. All three appealed.

The alleged victim of the assault, Glen Lodl, a St. Louis police officer, testified that at 1:30 a.m. while he and officer Hackmann were arresting the trio for a traffic violation Mixen cursed the officers and said, "There is three of us and only two of them, I am tired of them (blanking) with us," whereupon he struck Hackmann in the chest with his fist, knocking him backwards, and kicked him in the groin as he went down to the ground. Lodl then struck Mix-

en in the head with his nightstick. Mixen backed up a bit, then came at Lodl, kicked him, and knocked him down. Lodl got up and struck Mixen again. Then Lloyd and Hanger jumped on Lodl, and then all three were fighting Lodl. At that point two other officers arrived and finally the three men were subdued, handcuffed and taken directly to a hospital. Mixen, seriously hurt, was confined in the hospital for sixteen days. The other two defendants were discharged after a short stay at the hospital, and were then taken to the police station, booked and incarcerated. Lodl, Hackmann and the other two officers were treated at the hospital for injuries. Lodl's stomach and left hand were injured. Hackmann's left leg was bandaged for traumatic injuries. A third had a chest contusion. Various aspects of Lodl's testimony were corroborated by the other three police officers.

Defendants' version of what happened was entirely different. According to them they were arrested without cause; the truck in which they had been riding was searched without a warrant; they were arrested and handcuffed and thereafter at the scene were physically abused by the officers, who were the aggressors; they were taken directly to the police station (not directly to the hospital), where they were placed in cells, and after sleeping for a while were awakened and again beaten by the officers. An hour after the second beatings they were finally taken to the hospital, according to defendants.

Appellants' first point is that the court erred by "failing to require the production of hospital records subpoenaed by Defendants." In their brief appellants state that they caused a subpoena duces tecum to issue for certain hospital records in order to show the exact time of their admission to the hospital, as bearing on the disputed issue whether the police first took defendants to the hospital or first to the police station. They further state that the subpoena was served and a proper return was made to the court but that the records called for in the subpoena were not produced and that the

court "failed to grant Defendants sufficient time to obtain said records." They claim a right as of course to the production of such documents as in their judgment were required to meet the issues and that they were deprived of their statutory right to have the hospital records produced and brought into court.

There is nothing in the transcript to show that appellants caused a subpoena duces tecum to issue or that one was served and a proper return made. We have only appellants' statement in the brief for this. That does not establish the fact. If it be conceded that it happened there is nothing in the transcript or brief to substantiate appellants' theory that the hospital records would show an hour of admission late enough to account for the happenings which appellants claim occurred at the police station before they were taken to the hospital. The only indication in the transcript as to the time of admission to the hospital refutes appellants' contentions in this respect. The entire record on this, made at the very end of the trial, follows:

"THE COURT: Is that all the evidence?

"MR. WATSON: Just a minute, please. Your Honor, there is one thing about this hospital record. Of course, I believe it would show the time that the first two men arrived, and I mean Hanger and Lloyd, and it would show when Mixen arrived, and that was the reason I wanted that hospital record.

"THE COURT: When did they arrive? He will agree to that?

"MR. WATSON: I don't know whether he can. The arrived about two hours apart.

"MR. WALSH: Well, I don't know.

"MR. WATSON: I don't know either.

"MR. WALSH: I really do not know. The only thing I can say is, we have made some effort, by very, very recently to check the same thing, and—

"THE COURT: You can find out and I will let you tell me.

"MR. WALSH: If you will take it as heard and submitted and the records will come in.

"MR. WATSON: To give us an opportunity to get that information.

"THE COURT: All right. I am not going to hold this forever. I will hold it until tomorrow morning.

"MR. WATSON: If I can get it this afternoon, I will go out there and try.

"THE COURT: Is that all?

"MR. WATSON: Yes.

"(Subsequently, the following information was furnished the Court in regard to the admission of the defendants to the hospital: Defendant Mixen admitted at 2 A.M. September 17, 1965. Defendant Hanger examined at 1:45 A.M., and refused medical attention. Defendant Lloyd was X-rayed and discharged at 1:45 A.M.)"

The only assignment of error in the motion for new trial which conceivably touches this matter is assignment number 7: "That the Court permitted into evidence incompetent, immaterial and irrelevant testimony over the objection of the Defendant." If this be deemed sufficient to raise the point, we observe that there was no such objection at the trial. The point on appeal now sought to be raised was not raised in the motion for new trial. If in the face of this record we overlook the fact that proper objections were not made at the trial, consider that the point was raised in the motion for new trial, and make the broad and unsupported assumption that the hospital records show some different time of admission compatible with their theory, appellants are yet faced with insurmountable difficulties. When counsel for appellants told the court why he "wanted that hospital record" he did not request the court to take any action to enforce the command of the subpoena duces tecum. He did not object to the submission of the case without this evidence, or ask for a continuance. On the contrary he asked for an opportunity to get the records himself, indicating that he would get them that afternoon, if possible. The plain inference is that the information ultimately furnished the court was produced by the efforts of counsel for appellants, and there is no denial that this is what happened.

■ There is no duty on a court to enforce its process *sua sponte*. When there has been a failure to respond to a subpoena the party desiring the evidence may apply to the court for an attachment of the body of the witness, § 491.150, RSMo 1959, V.A.M. S., or resort to contempt proceedings, but enforcement of the command of a subpoena in cases of noncompliance is ordinarily initiated by the party in interest and not by the court. Appellants made no effort in this direction, and there was no obligation on the court to act on its own motion under the circumstances.

■ Appellants' second point is that the court "erred in permitting into evidence incompetent, immaterial and irrelevant testimony." This assignment is too general to preserve any evidentiary point for appellate review. State v. Sanders, Mo.Sup., 360 S. W.2d 722, 724 [1].

■ Appellants' third point is that the punishment of seven years' imprisonment "is cruel and inhuman." No reason is given and no authority is cited for this proposition. The punishment for assault with intent to do great bodily harm with malice is imprisonment "not less than two years." § 559.180, RSMo 1959, V.A.M.S. The seven-year terms were authorized by the statute, and in view of the gravity of the offenses and the previous criminal records of appellants we cannot say that the punishment is cruel or inhuman.

We have examined the indictment, the judgment of the court finding each of the appellants guilty, and the judgment and sentence as to each appellant. We find these proper in form and substance. Appellants

were represented by counsel at all stages of the proceeding from arraignment through argument on appeal. Appellants waived the reading of the indictment, pleaded not guilty, waived trial by jury, submitted their case to the court sitting without a jury, and were present throughout the trial and at the time of judgment and sentence. Allocution was accorded each of them. The punishment is authorized by law.

No error appearing, the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.