STATE of Missouri, Respondent,

v.

Jimmie JOHNSON, Appellant.

Nos. 54742, 54743.

Supreme Court of Missouri,
Division No. 2.

John C. Danforth, Atty. Gen., Jefferson City, Charles A. Blackmar, Asst. Atty. Gen., for respondent.

George L. Fitzsimmons, St. Louis, for appellant.

RICHARD C. JENSEN, Special Judge.

Defendant Jimmie Johnson was charged in two separate indictments with the crimes of assault with intent to ravish with malice aforethought and with assault with intent to kill with malice aforethought.

The matter was tried to the Court without a jury after a full hearing was held in open Court concerning the waiver of a jury trial by the defendant.

In this hearing, the defendant requested that he be tried by the Court and not by a jury. He was advised fully by the Court of his rights to have the case heard by a jury. Defendant signed a written waiver of jury trial which was assented to by the trial judge.

At the request of defendant and his attorney, it was also stipulated and agreed that the facts adduced in evidence would apply and be the same in both cases and could so be considered by the Court.

The Court, after hearing the evidence, found the defendant guilty beyond a reasonable doubt of both charges and, after overruling defendant's motions for new trials, sentenced the defendant to a term of thirty-five (35) years in the custody of the Missouri Department of Corrections on the charge of assault with intent to ravish with malice aforethought, and to a term of twenty (20) years in the custody of the Missouri Department of Corrections on the charge of assault with intent to kill with malice aforethought, the sentences to run concurrently.

Five points are urged by defendant in his appeal to this Court.

First, it is contended that the Court erred in not preparing an opinion and in failing to give declaration of law to the extent necessary to indicate the Court's theory of the applicable law.

Defendant cites several cases on this point, the latest being State v. Ramsey, Mo., 368 S.W.2d 413.

None of these cases can be applied to this case, which was tried March 17, 1969, because of the amendment of Supreme Court Rule 26.01(c), V.A.M.R., which became effective February 1, 1969.

Under Supreme Court Rule 26.01(c), as amended, it is not necessary, nor mandatory, for the trial judge to prepare an opinion in a felony case heard without a jury.

Second, it is contended that the verdict and judgment are against the weight of the evidence.

It will, therefore, be necessary to set out the evidence in some detail.

The State's testimony was: At approximately 1:00 A.M., on May 17, 1967, Robert Webb and Patricia Skagg were standing under the entrance roof leading to an underground parking garage while waiting for a bus. It was raining at the time.

While standing there, the defendant appeared "from nowhere."

He had a gun in his hand and ordered Robert and Patricia to go downstairs to the underground garage.

When they got downstairs, defendant ordered them to go to a parked car and asked Robert if he knew how to start a car without a key, whereupon defendant lifted up the hood of the car and told Robert to get under it.

When Robert complied, he was hit over the head with the gun and was knocked down. He was stunned but was not unconscious. He was then dragged to the other side of the car where his hands and feet were tied with a belt and scarf.

Later, Robert heard Patricia crying and by looking underneath the car could see her on the other side of the car without any clothes on. Defendant was on top of her. Robert, who had also been gagged, made a noise, whereupon defendant "came over" and hit him again. The last time defendant came over he pointed a gun at Robert and said he was going to kill him.

Robert had managed to untie himself and get his knife out of his pocket, but pretended to be still tied up. Defendant at this point leaned over and pulled the trigger on the gun. "When he pulled the trigger, I stabbed him and the gun went off, but missed me. He grabbed me and we started fighting." Robert stabbed the defendant and took the gun away from him and shot him.

Defendant took off running and was found by the police a short time later hiding in a parking shack several blocks from where the crime had been committed.

Robert looked for Patricia but could not find her, she having escaped from the scene when Robert and defendant were scuffling.

Patricia testified that defendant tied her up on the side of the automobile opposite Robert by tying her hands behind her back; that he ripped off her clothes and laid on top of her. While he was on top of her, Robert made some noises, whereupon defendant went back to the other side of the car.

When defendant left her to return to Robert, she escaped from the scene and ran to the Mark Twain Hotel, a downtown hotel, and called the police, Patricia's only clothing being defendant's raincoat.

When the police responded to Patricia's call, they picked her up and returned with her to the scene of the crime, where they found the wounded Robert, and a short distance away found the wounded defendant. Robert's head was bleeding and he was using his tee shirt as a bandage.

Defendant's testimony presents an entirely different version of the incident.

Jimmie Johnson testified that on the day of May 16, 1967, he had worked until near midnight; he was walking near Market Street after midnight when he was accosted by Robert and ordered downstairs into the garage at gun point.

Robert took the defendant's money and ordered him to remove his clothes. At this point he observed Patricia in the underground garage completely naked. He refused to have anything to do with Patricia and began struggling with Robert and was shot.

In arguing the sufficiency of the evidence, defendant raises the point that Patricia did not scream while Robert was being tied up. This is answered by Patricia's testimony, "He told me if I screamed, he was going to hit me over the head with the gun."

Defendant, also, argues that Robert could not have been able to see in the dark garage. There is, however, testimony in the case that there was one light burning that kept the garage from being completely black and that one could see "when you got used to the darkness."

It is also noted that defendant was able to see the things to which he testified while in the garage at this same time.

There are other matters of evidentiary discrepancies which defendant contends to be discrediting. We have examined all of the testimony carefully and conclude there is no merit to these contentions.

We find that there is ample evidence upon which the trial court could find the defendant guilty of both charges.

■ In determining the sufficiency of the evidence in a criminal case after a verdict of guilty, the Court accepts as true all evidence in the record tending to prove the defendant's guilt, whether such evidence is circumstantial in nature, together with favorable inferences that can be reasonably drawn therefrom and disregards all contrary evidence and inferences, State v. Chase, Mo., 444 S.W.2d 398, citing also from State v. Bayless, 362 Mo. 109, 240 S.W.2d 114, 119, "[I]n ruling the issue presented we are required to view the whole evidence in a light most favorable to the State."

■ Defendant next urges that the punishment of thirty-five (35) years im-

prisonment assessed by the Court is grossly excessive even though within the statutory limits.

Each of the charges upon which the defendant was tried is included in § 559.180, RSMo 1959, V.A.M.S., wherein the punishment provided is not less than two years imprisonment upon conviction.

In this regard, three cases are cited by defendant, Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793; Weber v. Commonwealth, 303 Ky. 56, 196 S.W.2d 465; State v. Kimbrough, 212 S.C. 348, 46 S.E.2d 273.

In the Weems case, supra, decided by the United States Supreme Court in 1910, it was held that a penal statute of the Philippine Islands was repugnant to the Bill of Rights in that the punishment imposed was cruel and unusual. In so ruling, the Court found that the fault was in the law itself and not in the punishment as assessed by the Court within the law.

The applicable statute in Weems made it mandatory, after conviction of the crime of falsification of records, to assess a penalty of not less than twelve years at labor for the benefit of the state. The prisoner to also carry a chain at the ankle, hanging from the wrist; he is to be employed at hard painful labor and shall receive no assistance whatsoever from without the institution. The ruling in the Weems case cannot be applied as the same issue is not involved. The defendant here is not urging that the statute under which he was sentenced in itself provides for cruel and unusual punishment but contends that the sentence of thirty-five (35) years imposed even though within the limits prescribed by the Missouri statute is excessive. The United States Supreme Court held later in Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, that the apparent severity of a sentence within the limits prescribed by statute does not warrant an appellate court to interfere with it. This Court has followed the ruling in

Blockburger, supra, to be the law of the State of Missouri.

The punishment imposed here is within the statutory limits and, therefore, cannot be held to be cruel or unusual or excessive. State v. Westfall, Mo., 367 S.W.2d 593. Punishment imposed within the statutory limits presents nothing for appellate review. State v. Jackson, Mo., 371 S.W.2d 309. The other two cases cited by defendant on this point are not from our Missouri Appellate Courts and since the Missouri law is clear and well settled on this point, they are of no assistance to the defendant here.

Defendant's fourth point raised is that the Court erred in stating that the "ordinary" objections and rules of evidence need not be followed because the Court would decide the guilt or innocence of the defendant.

This point is without merit as the only statement by the Court in this regard coming after an objection by defendant's counsel to narrative form of questioning was as follows:

"THE COURT: Do it by specific questions, if you can. For the purpose of this trial, the ordinary objections that would be proper for the defendant to make are not necessary; for example, leading questions, things of that kind, because I know that they are leading, as well as you. So, it is not going to prejudice me one way or the other and not going to do an injustice to this defendant; I can assure you of that. However, I would prefer that it be conducted in question and answer form. My reason is I am taking some notes and in order for me to keep up with the testimony of the witness, if he gives it in narrative form, I cannot do it. I will sustain it on that ground because I cannot keep up. My court reporter will have it, but sometimes I want my own notes so I don't have to call on her."

Defendant cites no specific instance of improper or incompetent testimony being admitted, nor do we find any in our review of the testimony in the case. Furthermore, the assignment of error is too general to preserve any evidentiary point for appellate review. State v. Mixen, Mo., 426 S. W.2d 92.

Defendant's fifth point is that the Court erred in failing to dismiss at the close of the plaintiff's case the indictment charging him with assault with intent to kill with malice aforethought, contending that there was a material variance between the charges and the proof in that defendant was not fully informed of the charge.

This contention is not directed to the charge in which he received the sentence of thirty-five (35) years.

The indictment in question states that the appellant:

" * * * did make an assault upon ROBERT WEBB with a certain weapon, to-wit: a pistol and knife, a means likely to produce death or great bodily harm, and did then and there point at, against and upon, and cut, stab and wound the said ROBERT WEBB with the intent then and there to kill the said ROBERT WEBB; * * * "

Defendant in arguing this point takes the position that the proof offered by the State in support of the indictment does not show any stabbing and only shows a striking with a pistol and a shooting with a pistol, citing S.Ct. Rule 26.04, S.Ct. Rule 24.11, V.A.M.R., and cases in support thereof, State v. Reynolds, Mo.App., 274 S.W.2d 514; State v. Biven, Mo., 151 S.W.2d 1114; State v. Bridges, Mo., 412 S.W.2d 455.

A review of these cases does not show how they could be of aid to defendant.

Defendant's position in this regard, as briefed, is that the indictment is faulty because of the use of the words, "a pistol and knife" when the trial court found no evidence that a knife had been used.

There is here an assault with a deadly weapon, an allegation that two different weapons were used and a finding by the Court that only one of these weapons was used.

Therefore, the reference to the knife could only be surplusage and would not render the indictment invalid.

In State v. Johnstone, Mo., 335 S.W.2d 199, 203, the Court stated the law as follows: "Where a statute denounces but one offense which may be perpetrated by different nonrepugnant acts, as robbery, the commission of the offense by different acts may be charged in a single count, the conjunctive 'and' being substituted in the charge for the disjunctive 'or' in the statute; and proof of the consummation of the offense by any of the acts by which it may be committed will sustain the charge." State v. Craft, 299 Mo. 332, 253 S.W. 224; State v. Eddy, Mo., 199 S.W. 186.

Both of the judgments are affirmed.

DONNELLY, P. J., and MORGAN, J., concur.

FINCH, J., not sitting.